### County of Crawford v. George L. Walter.

1. COUNTIES—*Contracts with, How Made.*—While the county board alone has power by law to bind the county by contract, it may, by resolution or vote, clothe committees or agents with power to act for it.

2. SAME—*Power of Committees to Contract.*—When a board of supervisors legally passes a resolution to proceed to build a court house, appoints a building committee, and by another resolution empowers and fully authorizes such committee to carry out the resolution to build the court house and to complete it without delay, all contracts made with such committee, within the scope of its commission, are as binding on the county as if made direct with the board of supervisors.

3. COMMITTEES—*Power of One Member to Act*—.When it is the duty of a committee to act, and where the act done is an act proper for the committee to do at the particular time, being a mere detail in the discharge of the general duties imposed upon it, if such act is performed by any member of the committee, with the general acquiescence of the whole, in the absence of fraud, collusion or bad faith, it will be deemed the act of the committee.

Assumpsit.—Appeal from the Circuit Court of Crawford County; the Hon. EDWARD D. YOUNGBLOOD, Judge, presiding. Heard in this court at the August term, 1899. Affirmed. Opinion filed March 16, 1900.

BRADBURY & MACHATTON, GEORGE N. PARKER and VALMORE PARKER, attorneys for appellant.

HAMPTON S. BOGARD, State's Attorney, for appellant.

MAXWELL & JONES and GEE & BARNES, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in assumpsit in the Circuit Court of Crawford County, by appellee against appellant. Trial was by jury. Verdict and judgment in favor of appellee for $618.75.

The declaration consists of a number of the common counts, among them, the counts for goods, wares and merchandise sold and delivered, the money counts and the count for interest. The controversy grows out of a demand by appellee for payment for about 113,000 brick used in the construction of appellant's court house.

On the 28th day of May, 1895, the Board of Supervisors of Crawford County passed a resolution to proceed to build a court house, and appointed a building committee of five to carry out the resolution, to select plans, act, and contract, and complete such building without delay. On the 8th day of August the building committee entered into a contract with T. S. Morse & Son, whereby Morse & Son agreed to furnish all material and perform all work in the construction of the court house and complete the same in every detail

County of Crawford v. Walter.

for the sum of $40,000, payable in county warrants, payments to be made on architect's estimates as the work progressed, the county retaining twenty per cent of the amount of the estimates until the building should be completed according to contract. The contract also provides, among other things, that in case the contractors shall at any time refuse or neglect to supply a sufficiency of proper material to prosecute the work with promptness and dispatch, then the county shall be at liberty to procure such material and deduct the cost thereof from any money then due or to become due to the contractors, and under certain conditions, that the county should also be at liberty to determine the employment of the contractors and itself complete the contract. This contract was duly approved by resolution of the board of supervisors.

The contractors entered upon the performance of the contract and engaged appellee to furnish all the soft brick necessary for the building. The work progressed with reasonable promptness and dispatch until the walls of the building were almost up, when, on account of the inability of the contractors to procure money on the warrants in which by the terms of their contract they were being paid, they were unable to pay for the necessary material, and all work on the building stopped. This occurred some time in the spring of 1896. While this condition of things prevailed the building committee met on the 21st of April, and again on the 27th of April, and on the 29th day of April reported to the board of supervisors that the work on the building had stopped.

Under this condition both the building committee and the board of supervisors were moved to take action in the matter and devise means for starting up the work and carrying it forward. To that end an agreement was entered into between the committee and the contractors, whereby it was, among other things, agreed that county orders should be issued in lieu of certain interest-bearing warrants, that the county should cash these orders and pay out the proceeds for labor, material and freight for the construction of the

court house, and that the sum so paid should be treated as an advance payment on the contract price. This agreement was reported by the building committee to the board of supervisors, and was, on the 29th day of April, 1896, duly approved. The county orders were issued in lieu of the specified warrants. This action of the committee and of the board was made of record and was publicly known.

By this agreement the county undertook both to cash these orders and to pay out the proceeds for labor, material and freight for the construction of the unfinished building. The board of supervisors provided no means for carrying this undertaking into effect, except through the building committee which the board had originally created and commissioned to "select plans, act and contract, and complete such building without delay." This committee had been in the continuous active exercise of all the powers delegated to it from the day of its creation, and in pursuance of the purposes of this agreement, though certain of its more active members, among them Mr. H. L. Bovell, immediately set about the discharge of the duties undertaken by the county. They were able to and did procure, through the assistance of certain public-spirited citizens of the county, money with which to cash the orders, did cash the orders, and receive, expend and direct the disposition of the proceeds. At the time the board of supervisors took action in the matter, the walls of the building were not quite up, the upper joist could not be put on and the building was not roofed. The most pressing demand was for brick to finish the walls. Appellee having been unable to get pay from the contractors for what brick he had delivered, had ceased to deliver and absolutely refused to deliver any more brick under his contract with the contractors. About the 16th of May, 1896, while matters were in this state, committeeman Bovell and appellee met. As to what occurred at that meeting appellee testifies as follows:

" Bovell wanted me to haul some more brick over to the court house, and I said with an oath, ' You can't have any more brick without I'm guaranteed my pay; I have got

every dollar into it I am going to put into it.' He then said, 'How many more brick will it take to finish the walls so we can inclose the building?' I couldn't tell exactly how many courses of brick it would take till I went and looked over the walls and made an estimate; he says, 'What will you take to furnish the brick to inclose the building?' I told him I would figure upon it. I estimated that it would take between 105,000 and 110,000 more brick. When I got through I went over to Callahan's office and found Bovell and Hanby Jonus and Harry Otey in the east room of Callahan's office. They wanted to know if I had found out how much brick it would take and I said yes; I told them it would take $550 to inclose the building and square up to the roof, and Mr. Bovell then told me to go ahead and haul the brick and he would guarantee me my money. I commenced delivering brick that day and it took till the 4th day of August, 1896. I hauled 113,000 brick."

On the 3d day of August, 1896, the board of supervisors finally declared the contract with Morse & Son forfeited and proceeded to complete the building.

It is admitted that appellee furnished the brick, that the brick were used in the construction of the building, and no question is raised as to the price, but appellant's counsel contend that the county is not liable. They say, "There is one broad proposition that never ought to be lost sight of in this case and that is, the county can only be legally bound by its legally authorized officers acting within the plain provision of the law."

This is true, but such officers may employ suitable agencies. They say, "The duty to erect and keep in repair a suitable court house is by statute imposed upon the board of supervisors, and no other power whatever is authorized to perform this duty."

Also true, but the board of supervisors may perform this duty through agents. They further say, "To bind the county the contract must be made with the county * * * by its board of supervisors." True, but a contract may be made with a county by its board of supervisors acting through a properly constituted committee or agent. In Sexton v. County of Cook, 114 Ill. 174, it is held that while the county board alone has power by law to bind a

county by contracts, yet the board may, by resolution or vote, clothe committees or agents with power to act for it. To the same effect is the holding in Bouton v. McDonough County, 84 Ill. 384, and we have been cited to no authority which, in our judgment, holds to the contrary.

After the board of supervisors had legally passed a resolution to proceed to build a court house, it legally appointed a building committee, and by resolution empowered and fully authorized that committee " to carry out the resolution " (to build the court house); empowered and authorized that committee " to act and contract, and complete such building without delay." Any contract made with that committee within the scope of its commission is as binding on the county as if made direct with the board of supervisors, and the language of the resolution granting power to the committee is broad enough to embrace all the power the board itself had concerning that subject-matter and clearly included the power, under the conditions existing at the time, to contract for the brick in question. If that committee did in fact contract for the brick, then the county is bound thereby and ought to pay.

It is claimed by appellant that committeeman Bovell was the agent of the contractors at the time of this deal with appellee, but when the whole record is considered together that position is not sustained. By one of the clauses in the agreement of April 29th, he was given power to act for and bind the contractors, but this was intended and understood to be wholly for the protection of the county in its final settlement with the contractors, concerning the proposed expenditure to be made by the county for labor, material and freight, to be charged against the contractors as advance payment on the contract. He retained his membership in both the board and committee and continued with the full knowledge and acquiescence of all, to be, as he had been from the beginning, the most active member of both these bodies.

It is further insisted that if any such contract was made as claimed by appellee, that it was not the act of the com-

mittee; that Bovell could not act for the committee.    We know of no law that requires such committee to adopt any particular manner or form in the transaction of its business, nor in ascertaining or evidencing the will of the individual members.    When it is the duty of a committee to act, as it clearly was in this case, and when the act done is an act which was proper for that committee at that particular time to do, as the purchasing of the brick in this case was, and is a mere detail in the general discharge of the larger duty imposed upon the committee, as this act was, and such act is performed by any member of the committee with the general acquiescence of the committee, which we find from the evidence was true in this case, then, in the absence of fraud, collusion or bad faith, such act will be deemed and held the act of the committee.

Many questions are raised as to the admission and rejection of evidence and the giving and refusing of instructions, all of which we have duly considered; and while the record in the respects complained of is not wholly free from error, we think appellant has not been prejudiced thereby. Upon the whole record it is manifest that substantial justice has prevailed, and we find that the judgment of the Circuit Court ought to be affirmed.

The judgment of the Circuit Court is affirmed.