PATRICK J. SEXTON

*v.*

THE COUNTY OF COOK.

*Filed at Ottawa May 15, 1885.*

1. CONTRACT WITH A COUNTY—*of the mode—by whom—delegation of authority by county board—as to work done outside of contract—ratification by payment.* The county board of Cook county, in July, 1877, passed this resolution: "Resolved, that the contractor on the new court house, P. J. Sexton, be and he is hereby instructed to build as much of the foundation of the dome, under the supervision of the architect, as is necessary to inclose the building, subject to the architect's valuation of the same:" *Held,* that this resolution, when accepted by Sexton, constituted a contract for the building of a portion of the foundation of the dome.

2. The county board alone has power by law to bind a county by contract. There is no such power in an architect, or a committee appointed by the board, unless it has been bestowed by the county board. But the authorized body of a municipal corporation may, by a resolution or vote, clothe its officers, or agents, or committees, with power to act for it.

3. Where a county board, by resolution, directed a party to build so much of the dome of a court house being erected as was necessary to inclose the building, under the architect's supervision, and subject to his valuation of the same, it was *held,* that the architect, under such resolution, had authority only to supervise the work directed to be done, and make a schedule of prices for the same, and that any order of the architect for work outside of the terms of the resolution was not binding on the county.

4. A county board, by resolution, employed a contractor to build so much of the foundation of a dome for a court house as was necessary to inclose the building, the foundation being regarded the part below the ground, and the joint committee, and architect employed to supervise, afterward ordered the contractor to fill in the wall up to the main water-table or level of the first

story floor, which was done, and the work paid for, and the architect and committee then directed him to complete the work as far as the roof line of the building, a part of which was done, when further work was ordered by the board to be stopped, and payment was made for all the work which had been done under such orders: *Held*, that the payment for the work done under the orders of the committee and architect, outside of that required in the resolution, was not such a ratification of the subsequent orders made by them as to bind the county, and that the county was not liable to the person doing the work for the profits he might have made if he had not been ordered to discontinue it.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

On July 30, 1877, the board of county commissioners of Cook county passed the following resolution:

"*Resolved*, That the contractor on the new court house, P. J. Sexton, be and he is hereby instructed to build as much of the foundation of the dome, under the supervision of the architect, as is necessary to inclose the building, subject to the architect's valuation of the same."

The architect made a schedule of prices, as follows:

"*August 2, 1877.*

"Dressed ashlar masonry and dressed dimension masonry, throughout, at eighty cents per cubic feet; concrete, in Phinney's cement, at $16 per cubic yard; excavation, $1.50 per cubic yard; cutting and trimming pile-heads, thirty cents each; brick laid in cement and lime, half and half, and grouted, each course best selected brick, to full satisfaction of architect, $12 per thousand. Pile-heads to be measured in concrete, and excavation to pay for expense of scooping out between pile-heads. Cut stone arches and skewbacks to be built on estimated values. All walls measured solid. All work to be in strict accordance with specifications. I fix prices for dome work at the above schedule.

J. J. EGAN."

This paper was indorsed approved by the joint committee on public buildings and public service.

On October 27, 1877, the architect gave the following order to Sexton·:

"In compliance with the instruction of joint committee on buildings and service, you will please proceed to prepare and set the cut stone work of county's half of the dome of Cook county court house, up to the top of the main water-table, in accordance with the plans and details of the same, herewith submitted, at a cost of $15,375.

Respectfully,        J. J. EGAN."

The "main water-table" above referred to was at the top of the basement story, or first story above the ground. This paper was also marked approved by the above named committee.

On November 3, 1877, the architect gave to Sexton the following further paper:

"*November 3, 1877.*

"P. J. SEXTON—You will please extend the work of the dome so as to comprise the full half of the entire, up to the level of the first or main floor, including the cut stone work of the basement of the county's half of the dome, and thence continue the main internal piers complete up to the roof, subject to the schedule of prices dated August 2, 1877, and signed by me. All cut stone to be subject to special contracts, and to be submitted to the joint committee for approval before being executed.        J. J. EGAN."

The same committee indorsed this with their approval.

Sexton made preparation for doing the work, and proceeded therewith until he had constructed about forty-four feet in height of one side of the dome, when, on March 11, 1878, the work was stopped, under a resolution of the county board ordering a suspension of all work on the court house dome until the question of building the dome was settled between

the county and the city. Sexton brought suit against the county, claiming that the several papers above, with his action thereunder, constituted a contract between him and the county for building the dome wall from the basement to the roof of the building, a height of one hundred and twenty-eight feet, and that he was entitled to recover according to the contract price for the work he did do, and the profits for the work that he was ready and willing to do, but did not do because of the stopping of the work. The recovery, by the judgment of the circuit court, was only for the work done. This judgment was affirmed by the Appellate Court for the Second District, and Sexton appeals to this court.

Messrs. SWEET, HASKELL & GROSSCUP, for the appellant.

Mr. WILLIAM LAW, Jr., and Mr. E. R. BLISS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The errors assigned are, the refusing of an instruction asked by the plaintiff, and the giving of two asked by the defendant. The refused instruction asked by plaintiff was:

"If the jury believe, from the evidence in reference to the dome contract, that the board of county commissioners of Cook county passed a resolution authorizing and instructing P. J. Sexton to build as much of the foundation of the dome, under the supervision of the architect, as is necessary to inclose the building, subject to the architect's valuation of the same, and the jury further believe that one of the walls of the foundation of said dome formed also a portion of the west wall of the court house, and said building could not be inclosed without running up said wall, and that thereafter the plaintiff took said order to James J. Egan, the architect of the court house, and said architect in one order fixed the prices of said work, and in another order defined the manner of construction

12—114 ILL.

of said dome, and the extent and limits thereof, and the said Sexton thereupon proceeded and did a portion of the work, and was stopped by the defendant, and on his part was prepared and ready and willing to do all of said work, then Sexton is entitled to recover the value of the work done under the contract, *and the value of the contract for work not done,—or, in other words, he is entitled to the value of the work which he has done, and the profits on the work which remained to be done and was not done.*"

So much of the instruction as is printed in italics the court struck out, and gave the residue of the instruction to the jury. The two instructions given for the defendant were:

"That the resolution of the county board of Cook county adopted July 30, 1877, only authorized the building by Sexton of as much of the foundation of the dome as was necessary to inclose the building, and if the jury believe, from the evidence, that the foundation of the dome did not extend above the level of the basement floor of the court house, then such resolution, when acted upon by Sexton, did not constitute a contract between him and the county of Cook for the building of such dome above such foundations, nor above the level of such basement floor, and the architect, under such resolution, had no power or authority, by virtue of such resolution, to make a valuation of work done by Sexton above such foundation, and bind the county of Cook thereby.

"That notwithstanding the resolution of the county board adopted July 30, 1877, requesting Sexton to build as much of the foundation of the dome, under the supervision of the architect, as was necessary to inclose the building, subject to the architect's valuation of the same, the county board had a right to direct that work on the dome above the foundation be stopped or suspended, and by so doing incur no liability to Sexton for profits on work not done, and the jury will reject all claim in this case for profits on work not done on said dome above the foundation thereof."

In the language of appellant's brief herein, "the design was to erect, upon the public square in the city of Chicago, a joint building, one-half to be erected by the county, and to be used for county purposes, and the other half by the city, and for city purposes, and the intention was that each building should be complete in itself, and that the two buildings should be connected together by an octagonal dome, which, commencing at the ground, should run up about three hundred and sixty-six feet. This dome was so designed that a portion of the east wall of it should constitute (a portion of) the west wall of the court house, and a portion of the west wall should constitute (a portion of) the east wall of the city building. A space of about forty-four feet was left in the building, to be occupied by this dome wall, and when the dome should be erected, it (with the other work contracted to be done) would constitute the entire four walls of the county part of the building."

The resolution of the county board, of July 30, 1877, when accepted by Sexton, constituted a contract for the building of a portion of the foundation of the dome, and we are of opinion that was all the contract that existed between the county and Sexton upon the subject. It is the county board, only, which has authority, by law, to bind the county by a contract. There is no such power in an architect, or a committee, unless it has been bestowed by the county board. We find no such power to have been given here. "The authorized body of a municipal corporation may, * * * by a *resolution or vote*, clothe its officers, agents or committees with power to act for it." (Dillon on Mun. Corp. sec. 450.) And see *Rice* v. *Plymouth County*, 43 Iowa, 136; *Bouton* v. *McDonough County*, 84 Ill. 384. The architect had authority, under the resolution, only to supervise the work it directed to be done,—not to order the doing of any other work. The architect's orders of October 27 and November 3 were for work which was outside of the terms of the resolution of July 30, and were not binding upon the

county. That resolution, at the most, only authorized work which was necessary "to inclose the building." These orders directed work to be done on the entire county half of the dome,—the four sides of the octagon,—the resolution having reference to no more than work on one side of it.

So far, then, as regards prospective profits on work not done, under an alleged contract with the county, we are to look to the resolution of July 30, to see what the contract was. The direction under that resolution was, to build a portion of the foundation of the dome. Under the evidence in the case we think the court was justified in finding that the word "foundation," as used in the resolution, meant the part below the ground. It is objected to this that both parties, by their conduct, gave the contract a different construction. The acts of the architect, and of the joint committee on public buildings and public service, were their individual acts, and are not to be regarded as the acts of the county board. The county board appear to have begun with a contract for the foundation. Subsequently, Sexton was ordered by the joint committee to fill in the wall up to the main water-table, or level of the first story floor. This order was not binding upon the county, but the work was done and paid for. This does not necessarily imply any more than that the work having been done for the county, it was willing to pay for the same. And so of the subsequent direction to complete the work as far as the roof line of the building, so far as payment was made for that work.

As the resolution uses the language, "as much of the foundation of the dome *as is necessary to inclose the building,*" it is urged that the use of the italicized words shows an intention on the part of the county board to provide, by that resolution, for the closing up of the entire gap in the west wall of the building to the roof line. Defendant's view and explanation of that language is this: That the dome had not been determined upon when the resolution of July 30 was passed. It

was necessary that the city should coöperate with the county, in order that the dome should be built, and this the city had not done, and subsequently refused to do; that a very much heavier and more expensive wall was necessary if the dome was to be built than if it was not to be erected, and it would have been quite imprudent for the county, pending the settlement of the question as to whether there was to be any dome or not, to contract for the filling up the gap in the west wall to the roof line on the basis that the dome was to be built, and hence that the county board determined to contract for the work piecemeal, until the dome question was settled; that the foundation of the dome was octagonal, as was the dome itself, and only one of the eight sides of the foundation was determined to be built. The county board therefore directed Sexton to build one-eighth of the foundation, or so much of it as was necessary to render the inclosing of the building possible. This would seem to be a more reasonable interpretation of the meaning of the word "foundation," than that which the plaintiff urges. To inclose the building might have been, as argued by plaintiff's counsel, a prime object of the contract, and yet it not have been the purpose of this resolution to provide by it for closing up the entire gap in the west wall.

Some citations from works on architecture are made, with a view to show that the foundation of this dome extended to the spring of the arch or cupola. It may be admitted that a dome proper is an arched roof, but it does not follow that all below this arched roof is the foundation of the dome proper.

It is insisted that at least there was some evidence tending to show that the foundation of the dome extended to the roof line, and that therefore the court's ruling upon the instructions was wrong,—that the construction of the contract was a question of fact, dependent upon the intention of the parties and the condition of the building, and should have been submitted to the jury for its decision, and not have been de-

termined by the court. We do not find anything in the evidence in the case going to show that the foundation of the dome extended to the roof line. There seems to be nothing more in that respect than the unwarrantable inference which counsel would draw from the contract, the situation, and the acts and doings, which have been referred to, of the architect, and building committee, and defendant. We perceive no ambiguity with respect to the meaning of the term, "foundation," which should require submission to a jury to find such meaning, and take from the court its prerogative to interpret the meaning of a contract in writing.

It is admitted that the jury awarded to the plaintiff the full sum due for all work done.

Finding no error in the record, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*