(No. 12209.—Reversed and remanded.)

CHARLES PAULY *et al.* Defendants in Error, *vs.* THE COUNTY OF MADISON, Plaintiff in Error.

*Opinion filed April 15, 1919—Rehearing denied June 4, 1919.*

1. COUNTIES—*the duty of building court houses is imposed on boards of supervisors.* An imperative duty is imposed by law upon boards of supervisors to provide court houses for use of counties.

2. SAME—*committee of board of supervisors cannot bind board without authority.* Supervisors have no power to act individually but they must act together as a board in order to represent the county, and there is no power to bind the county by an architect or committee appointed by the board unless authority has been given by the board.

3. SAME—*persons dealing with agent of county must know the extent of the agent's authority.* All persons assuming to act as the official agents of a county must have the requisite authority for that purpose, othcrwise the county will not be bound, and any person dealing with them must know at his peril the extent of their authority.

4. SAME—*for what services architects may recover under contract with the county.* Where a building committee of a board of supervisors is authorized to contract with architects for plans for an addition to the court house and the report of their contract is

adopted by the board the architects may recover for the amount of services rendered under such contract but not for preparing plans, at the direction of the committee, for an entirely new court house, where the county board has neither authorized nor ratified the committee's action in that respect.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

J. F. EECK, for plaintiff in error.

D. H. MUDGE, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the Fourth District affirmed the judgment recovered in the circuit court of Madison county by the defendants in error, Charles Pauly and Edward C. Pauly, partners under the name of Chas. Pauly & Son, against the county of Madison for $5062.50 for services as architects under a contract with the building committee of the board of supervisors. A writ of *certiorari* was ordered for a review of the judgment of the Appellate Court.

At the meeting of the board of supervisors of the county of Madison held on December 1, 1909, the public building committee of the board submitted a report relative to improvements on the court house. The report recited at length the crowded condition of the county offices and the inadequacy of the rooms provided for the courts, with the prospect of being required to furnish further space for a probate judge and probate clerk after the next election, and stated that the revenue of the county at that time, without increasing the tax rate, would enable the board to appropriate and expend $50,000 per annum for improvements of the court house until they should be completed.

The committee presented and recommended the adoption of the following proposition: "To build a wing on the south side of the present building, three stories high, to cost about $50,000. After same is complete to the extent of a temporary occupancy, to move the offices from the center part to the south wing and then demolish the center portion and re-build same to conform with the south wing. This avoids renting any outside space. After completing the center part then remodel the north wing to make it conform with the balance of the building, the result being practically a new building three stories high, with all modern improvements and the appearance of a stone court house with architecture up to date." The report concluded with the statement that the total cost of the contemplated improvements would be covered by $150,000, which would mean an expenditure of $50,000 for a period of three years, building only each section, as above enumerated, annually. The committee asked for authority to secure the services of a competent architect and to make a contract with him to supervise and superintend that improvement on a basis that was customary, the committee to submit to the board the plans for approval and adoption, subject to alteration if not meeting the approval of the board. The report was adopted, and in pursuance of the authority given, the building committee on December 6, 1909, entered into a contract with plaintiffs, reciting that whereas the county was about to erect an addition to the Madison court house, the plaintiffs agreed to prepare the plans and specifications for the building, to make all necessary drawings, to procure estimates from builders and contractors for the construction, and, by and with the consent of the county, to let the contract to the lowest responsible bidder and to superintend the construction of the building. The county was to pay five per cent of the aggregate amount of all contracts, but if superintending the structure by plaintiffs should be dispensed with they were to receive

288 — 17

three per cent of the aggregate amount of all contracts. At a meeting of the board on January 6, 1910, the building committee submitted a report relative to the proposed improvements on the court house, stating that it had secured the services of the plaintiffs and made a contract with them for plans on the customary basis of three per cent of the cost of the building and five per cent if the plaintiffs did the superintending, and that the committee had visited Springfield, Decatur, Lincoln and Bloomington and got a great deal of valuable information by inspecting buildings and getting ideas for plans. The report was adopted and the contract thereby approved. At a meeting of the board on February 3, 1910, there was a discussion of the court house proposition, and the board was informed by the building committee that the Illinois Traction System had chartered a car "free gratis" for the whole board to visit Springfield, Lincoln and Bloomington. At a meeting of the board on March 10, 1910, the resolution of a mass meeting held that day was received and spread of record opposing the proposed plan for remodeling the court house and against the present site and in favor of a new court house and a new site to be donated by the citizens of Edwardsville, favoring a bond issue and demanding open competition in every phase of the work, including the employment of architects, contractors and furnishers. This resolution amounted to a protest against the previous action of the board and the proposed plan and demanded open competition in the employment of architects for a new court house as well as contractors and furnishers. At some time after that mass meeting the committee instructed plaintiffs to prepare plans for a new court house, for which no authority had been given. The plaintiffs prepared plans for such new court house, estimated to cost $225,000 without heat, light or plumbing, which would amount to about $25,000 additional. At a meeting of the board on August 9, 1910, the building committee submit-

ted the plans and specifications prepared for a new court house, and the building of the proposed new court house was referred to the judiciary committee, to act in conjunction with the State's attorney and have the proposition voted on at the November election, 1910. At a subsequent special meeting of the board the judiciary committee reported that it had agreed upon a resolution providing for erecting a new court house at the present court house site in Edwardsville, the question of issuing county bonds therefor to the amount of $350,000 to be submitted to a vote of the people at the election on November 8, 1910, and that report was adopted. The proposition was submitted at the election and defeated. At the January, 1911, meeting of the board the building committee made a lengthy report reviewing the various proceedings, stating that the bond issue had been voted on and defeated; that the cost of a new court house would be about $225,000; that after the mass meeting, in March, 1910, the committee believed the public desired practically a new building and had instructed the plaintiffs to prepare plans accordingly, which were presented to the board. The committee recommended that the plans prepared by plaintiffs be accepted and the building committee authorized to advertise for bids in accordance with the plans and proceed with building operations. The report was laid on the table until the next regular meeting. At the February, 1911, meeting, the chairman of the building committee moved the adoption of the committee report for remodeling the court house, with an amendment authorizing the committee to advertise for bids for a contract to build a new court house, the cost of the building not to exceed $250,000. On a vote the motion was lost.

The declaration contained the common counts for labor, services and materials and two special counts setting out the contract *in hæc verba,* alleging the ratification of the same by the board on January 6, 1910, performance

by the plaintiffs in accordance with the contract, and the wrongful failure, neglect and refusal of the county to proceed with the construction of the building. The trial was before the court without a jury, and there were frequent objections to evidence as irrelevant and incompetent, but everything offered was admitted subject to objection, and there is no method of determining what was regarded by the court as competent and relevant. In this opinion, however, all the facts proved by legitimate evidence are stated and it will not be necessary to consider objections made to evidence.

The court held a proposition of law that the plaintiffs were not barred from recovering because of the fact that the plans and specifications made did not call for a reconstructed building or a building built in additions, on account of the acts of the board at the meetings held in January, February and March, 1910, above stated. There was nothing in any act of the board justifying such a holding. Among the duties imposed by law on boards of supervisors is the duty to build court houses, and it is their imperative duty to provide the same for the use of the county. (*Andrews* v. *Board of Supervisors,* 70 Ill. 65; *County of Coles* v. *Goehring,* 209 id. 142.) Supervisors have no power to act individually, and it is only when convened and acting together as a board that they represent and bind the county by their acts. (*Bouton* v. *Board of Supervisors,* 84 Ill. 384; *Marsh* v. *People,* 226 id. 464.) There is no power to bind the county by an architect or committee appointed by the board unless authority has been given by the board. (*Sexton* v. *County of Cook,* 114 Ill. 174.) All persons assuming to act as the official agents of a county must have the requisite authority for that purpose, otherwise the county will not be bound, and everyone dealing with them must know at his peril the extent of their authority. (*Scates* v. *King,* 110 Ill. 456.) The county board gave authority to its building committee to secure the services of

competent architects to prepare plans and specifications for
alterations and improvements of the court house, as speci-
fied in the report of the building committee on Decem-
ber 1, 1909.   By virtue of that authority the committee
on December 6, 1909, entered into the contract with the
plaintiffs to prepare plans and specifications for the contem-
plated addition to the court house.   There was authority
to make the contract and it was ratified and confirmed by
the board.   After the demonstration by the mass meeting
in March, 1910, the committee instructed the plaintiffs to
prepare plans for a new court house, for which no au-
thority had been given.   When the committee reported to
the county board at the January, 1911, meeting that it
had instructed the plaintiffs to prepare plans for a new
court house the report was laid on the table until the next
meeting, and at the next meeting the motion to amend the
committee's report so as to authorize a new building was
defeated.   There was no evidence tending to prove rati-
fication of the unauthorized act.   The court held another
proposition of law that the plaintiffs, in dealing with the
committee, were required to know at their peril the extent
of its authority; that the building committee had no au-
thority to bind the county for plans and specifications for
a court house that would cost $225,000 and would have to
be constructed all at one time, and the plaintiffs could not
recover unless it was shown that the plans were in accord-
ance with the contract entered into with the committee and
that the board ratified the contract with full knowledge of
all the material facts.   This statement of the law was cor-
rect, but it appears that the court concluded there had been
a ratification, of which there is no evidence.   There was
no right to recover for plans and specifications designed
for a new court house.

To prove their damages the plaintiffs introduced evi-
dence of the amount of work done both before and after
the change from the plans provided by the contract, includ-

ing those made for a new court house. Edward C. Pauly testified that after the contract was made the plaintiffs proceeded to prepare plans and specifications for the addition to the court house and consulted with the committee and made numerous sketches from ideas suggested from time to time, and that this continued for eight or nine months. For any services rendered in pursuance of the contract to make plans for an addition to the court house according to the proposition submitted by the building committee to the board of supervisors and adopted by the board the plaintiffs would be entitled to recover. This is so notwithstanding the fact that the plans were afterward changed by direction of the committee and the unauthorized order was given to prepare plans for a new court house. The evidence furnished no information as to the time when the change was made or the amount or value of the work done in pursuance of the contract in making plans and specifications for the addition.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*