2 Ill. App.3d 421 (1971)
275 N.E.2d 675
COUNTY OF STEPHENSON, Plaintiff-Appellee,
v.
BRADLEY and BRADLEY, INC., Defendant-Appellant.
No. 71-34.
Illinois Appellate Court  Second District.
November 17, 1971.
Rehearing denied December 17, 1971.
*422 Pedderson, Menzimer, Conde & Stoner, and Dale F. Conde, both of Rockford, for appellant.
Dexter A. Knowlton, State's Attorney, of Freeport, (F. Lawrence Lenz, Assistant State's Attorney, of counsel,) for appellee.
Affirmed in part; reversed in part and remanded.
Mr. JUSTICE GUILD delivered the opinion of the court:
Stephenson County was served with a demand of Bradley and Bradley, Inc., for arbitration pursuant to a provision contained in a contract for services under an American Institute of Architects standard form of Agreement between Owner and Architect. The plaintiff, Stephenson County, then filed a suit for declaratory judgment against Bradley and Bradley, Inc., praying for a finding that the written contract was void; for an order that defendant submit its claim as provided by Ill. Rev. Stat. 1969, ch. 34, par. 605; for an injunction restraining arbitration until final decision and for any other proper relief. In this appeal, defendant seeks reversal of a summary judgment for Stephenson County granted pursuant to motion supported by affidavits of various county officials and for an instruction that the parties proceed with arbitration.
Stephenson County alleged it had not agreed to the terms and conditions of the contract dated August 13, 1968, containing the arbitration *423 clause and providing that the architect was to be paid 20% of the basic fee in the event it was necessary to cancel the contract "after failure of bond issues and abandonment of project * * *." Incorporated into the complaint by reference was a copy of an August 13, 1968, resolution of the Stephenson County Board of Supervisors to employ defendant to prepare preliminary drawings for the construction of a nursing home for submission to the public in a November 5, 1968, referendum. This resolution provides that defendant's remuneration was to be designated in a written agreement between the Board and the architects "to the agreement of both parties hereto, it being understood by the Board at this time that no fee for said services to be rendered by said architects shall be owing for work performed by said architects prior to said referendum."
The voters did not approve the proposed construction on November 5, 1968. Defendant was subsequently asked to redesign the project and submit changes in plans which plaintiff county rejected, terminating the architectural services. The complaint alleges that the demand for arbitration which seeks an award of $30,820, includes all of defendant's services, and that plaintiff's offer to pay a reasonable amount for services rendered after failure of the referendum was refused by defendants.
Included in the record as defendant's exhibit is a letter of an assistant State's Attorney dated August 23, 1968, stating he had reviewed the proposed contract, and clarifying several items not relevant here. The contract itself is signed on behalf of Stephenson County by the Chairman of the Board of Supervisors and the Chairman of the Stephenson Home Committee. Their affidavits, as well as that of the county clerk, were filed in support of the motoin for summary judgment.
The Chairman of the Board of Supervisors states in his affidavit that architects were interviewed prior to employment of defendant at which time defendant's reprsentative responded "We are gambling with you" in answer to a question concerning what would happen to architect's fees if the November referendum failed. The affidavit continues that the Board of Supervisors voted to accept the Nursing Home Committee's recommendation to employ defendant on the basis they were not to be paid for services rendered or work performed prior to the November referendum. Affiant states the contract was presented to him in December of 1968 after the project had failed to gain approval in the referendum, with the request he sign it as Chairman of the Board of Supervisors which he first refused to do because it was not described in the terms and conditions voted upon by the Board in August. Subsequently, affiant says, the county clerk told him the assistant state's attorney had no objection to his signing the contract because it would provide a tax benefit to the architects due to the fact the referendum had failed. He signed it in *424 December, 1968, and left it with the county clerk.
The affidavit of the Chairman of the Nursing Home Committee states he suggested, after the Board agreed to select defendant as its architect, that an employment resolution be drawn up and signed at which time a representative of defendant stated: "Forget about that, I'll have a contract drawn up." In October, 1968, before the referendum another representative of defendant handed affiant the contract in question during a visit at a nursing home with the request he "get this signed some time." Affiant signed the contract at the county clerk's office and left it there.
The county clerk's affidavit states he had examined the minutes of the meetings of the Stephenson County Board of Supervisors and had found in them only three references to defendant prior to the nursing home referendum on November 5, 1968. The first was the August 13, 1968, resolution incorporated into plaintiff's complaint and quoted in pertinent part above, and the other two references did not concern the written contract or defendant's compensation.
The trial court stated in a written opinion that the Board of Supervisors understood no fee would be owing to the architects for work performed prior to the referendum; that the August 13, 1968, resolution of the Board of Supervisors was substantiated by the affidavits; that the County was not bound by any contract unless its provisions were authorized or approved by the entire Board of Supervisors; that it does not appear this was done at any time; and that the Chairmen were not authorized by the Board to enter into an agreement to pay defendant for services rendered prior to the referendum. It was the trial court's opinion that as a legal contract did not exist, there was nothing to arbitrate. Plaintiff county's motion for summary judgment was granted, and defendant's motion to dismiss the complaint or alternatively to order parties to proceed with arbitration pursuant to the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1967, ch. 10, par. 102 et seq.) was denied. Arbitration was permanently enjoined, and defendant was ordered to submit its claim against the county in the manner and form required by Ill. Rev. Stat. 1969, ch. 34, par. 605.
 1, 2 The trial court is obviously correct in its view that there was nothing to arbitrate unless a valid agreement between Stephenson County and the architect was existing. Even given a valid contract containing an arbitration provision, the scope of such provisions have often been construed by the courts and it has been said that "Despite the salutory purpose of our Arbitration Act, parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate * * *." Flood v. Country Mutual Ins. Co. 1968, 41 Ill.2d 91, 94, 242 N.E.2d 149.
 3-5 The trial court is similarly correct in deciding the County was *425 not bound by the written contract upon which defendant's arbitration demand is grounded unless its provisions were authorized or approved by the Board of Supervisors. A county board alone has power by law to bind a county contract, and there is no such power in an individual or a committee unless that power has been bestowed by the county board, (Sexton v. County of Cook (1885), 114 Ill. 174, 179, 28 N.E. 608 County Supervisors), including the Chairman of the Board, have no power to act individually. It is only when convened and acting together as a board of supervisors that they represent and bind the county by their acts. Bouton v. McDonough County (1877), 84 Ill. 384, 394 and 395; Pauley v. County of Madison (1919), 288 Ill. 255, 260, 123 N.E. 281.
 6-8 The rights of the parties turn upon whether the Stephenson County Board of Supervisors acting together ever authorized the signing of the written contract or approved of its terms. We cannot agree with defendant that this threshold question is only one of many which are properly to be determined by the arbitrator. Defendant has urged this conclusion in reliance upon a number of cases dealing with the scope of arbitration provisions, but unlike those situations, denial of the existence of an agreement to arbitrate calls for the decision of a court rather than the arbitrator. The Uniform Arbitration Act provides for application to a court to compel or stay arbitration, Ill. Rev. Stat. 1967, ch. 10, par. 102(a) and (b) and this statutory provision is part of any contract containing an arbitration clause just as if it were expressly incorporated. (Globe v. Central Sec. Mut. Ins. Co. (1970), 125 Ill. App.2d 298, 260 N.E.2d 860.) While defendant correctly argues that the merits of defenses must be presented to the arbitrator, the single question  whether there is an agreement to arbitrate  is for the court.
 9 Although Stephenson County filed a declaratory judgment action rather than an application to stay arbitration under the Act, the existence of an agreement to arbitrate was squarely raised and ruled upon. No authority has been cited to us, and we have found none, holding that an application to compel or stay arbitration is the exclusive route to a judicial determination of this threshold question. The remedies do not appear incompatible, and in somewhat different circumstances, a suit for declaratory judgment was filed and maintained after a demand for arbitration had been made by the opposing party. Emcasco Ins. Co. v. Alverez (1969), 110 Ill. App.2d 307, 249 N.E.2d 190.
We further agree with the trial court that the record contains an expressed understanding of the Board of Supervisors that no fee would be payable for architectural services rendered prior to the date of the referendum, and that it does not appear from the record that the Board ever approved entering into this particular written contract encompassing *426 as it does an agreement to arbitrate disputes and to pay defendant a percentage of the regular fee for all work performed.
We find the record before us, however, less satisfactory than did the trial court. The affidavit of the Chairman of the Board of Supervisors is the most persuasive of those filed, but it includes third-hand hearsay. The affidavit of the Chairman of the Nursing Home Committee says little and explains nothing of a seeming conflict in the affiant's signing a contract at variance with the understanding of the Board upon which he sat as a Supervisor. The county clerk's examination of the minutes of the meeting of the Board of Supervisors produced the August 13, 1968, resolution concerning employment of the architect but did not extend beyond the date of the referendum, although the parties had subsequent dealings.
 10 Despite these obscurities, we must conclude upon this record that the written contract was signed by two supervisors acting without authorization. Defendant has failed to show any agreement to arbitrate by Stephenson County and had opportunity to present any facts tending to show a later ratification by the Board of Supervisors or mistake in its record of proceedings requiring correction by amendment. Accordingly, we affirm summary judgment for the plaintiff and that portion of the order enjoining arbitration.
 11 We reverse the order insofar as it requires defendant to submit its claim against the county in the manner and form provided in Ill. Rev. Stat. 1969, ch. 34, par. 605. This section, which relates to verification and auditing claims against a county, and to appeals to the circuit court from decisions of the county board, is not an exclusive remedy. Ill. Rev. Stat. 1969, ch. 34, par. 601, provides that suits against a county may be "commenced" in the circuit court within the county, a totally different method from appealing to the circuit court from a decision of a county board. (Lord v. Bd. of Sup'rs. of Kane County (1942), 314 Ill. App. 161, 164, 165, 41 N.E.2d 106.) The choice of remedy should remain with the party having the claim.
Affirmed in part; reversed in part and remanded with direction to the trial court to set aside that portion of the order requiring defendant to submit its claim as provided in Ill. Rev. Stat. 1969, ch. 34, par. 601.
MORAN, P.J., and ABRAHAMSON, J., concur.