Robert W. HADLEY, Plaintiff-Appellant,

v.

COUNTY OF Du PAGE, et al.,
Defendants-Appellees.

No. 82–2222.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1983.

Decided Aug. 30, 1983.

Gary E. Dienstag, Chicago, Ill., for plaintiff-appellant.

James R. Schirott, Des Plaines, Ill., for defendants-appellees.

Before CUDAHY and COFFEY, Circuit Judges and VAN PELT, Senior District Judge.*

COFFEY, Circuit Judge.

The plaintiff, Robert W. Hadley, commenced this action under 42 U.S.C. §§ 1983 and 1985 seeking damages against Du Page County, Illinois and various individual members of the Du Page County Board. He alleged a violation of his constitutional due process rights based on the County Board's failure to provide a hearing either before or after his dismissal as the Du Page County Superintendent of Public Works. The main issue to be addressed in this appeal is whether the district court erred in granting the defendants' motion for summary judgment. We affirm the district court's grant of summary judgment to the defendants.

I.

Hadley obtained employment with Du Page County in 1964, and was promoted to the position of Superintendent of Public Works in 1970. He served in that capacity until his termination on December 20, 1978. Several months prior to his dismissal, Hadley fired Robert Mundorf, an employee of the Sewer Department. Although the official reason given for Mundorf's dismissal was his use of the office telephone for personal matters, Mundorf claimed that the true reason for his discharge was the discovery of his preparation of a report on certain irregularities within the Public

---

* The Honorable Robert Van Pelt, Senior District Judge for the District of Nebraska, is sitting by designation.

Works Department. Upon his termination, Mundorf presented allegations of mismanagement in the Department of Public Works to the Public Works Committee of the Du Page County Board. These allegations were turned over to the Du Page County state's attorney who thereupon commenced an investigation into the alleged mismanagement of the Public Works Department. The investigation generated widespread local newspaper coverage and some of the articles made reference to Hadley.

On December 20, 1978, Du Page County Board Chairman Jack T. Knuepfer announced Hadley's dismissal as Superintendent of Public Works. Board Chairman Knuepfer clearly indicated that the reason for Hadley's termination was his inability to efficiently manage the Public Works Department and not any pending criminal indictments or health problems.[1] Six days later, on December 26, the County Board ratified Knuepfer's termination decision. Hadley was not given, and apparently did not request, a hearing on his dismissal before the County Board. However, Hadley did submit a letter to the Board seeking reinstatement to his previous position. The Board never replied to that letter.

After his dismissal, Hadley attempted to obtain employment in the Du Page County area, but was unsuccessful. He ultimately accepted a position with the Public Works Department in Orange County, Florida at a lower salary.

On November 6, 1980, Hadley filed this action seeking damages in the amount of one million dollars. He alleged that the Du Page County Board violated his Fourteenth Amendment right to due process by failing to provide him with a hearing either before or after his termination. He asserts that this constitutional violation deprived him of a "property interest" in his continued employment as the Superintendent of the Du Page County Public Works Department and also a "liberty interest" in maintaining his reputation in the community.

The defendants moved for summary judgment. The district court determined that there was no material issue of fact and concluded that the motion for summary judgment was ripe for disposition. In deciding that motion, the district court held that the plaintiff's pleadings and affidavits failed to establish either a "property interest" in his continued employment or a violation of a "liberty interest" in his reputation in the community. The court held that Hadley had no right to a hearing under the Fourteenth Amendment and granted summary judgment to the defendants. The plaintiff now appeals.

## II.

Before reaching the main questions to be examined in this opinion, one lesser issue must be dealt with. The plaintiff in his reply brief asserts that his dismissal by the defendant Knuepfer was an illegal act because it was carried out without prior consent of the County Board. Based on that assertion, Hadley implies that this somehow warrants relief from this court. The plaintiff is correct in asserting that a county board chairman in Illinois has no power to act individually absent statutory or board authorization. *See County of Stephenson v. Bradley and Bradley, Inc.,* 2 Ill.App.3d 421, 275 N.E.2d 675, 678 (1971). This legal principle, however, does not justify granting the plaintiff's requested relief. Since the County Board subsequently ratified and approved Knuepfer's action on December 26, 1978, and thereby made the termination legally binding, the fact that Knuepfer initially acted without prior Board consent is irrelevant.

The main issues to be determined in this appeal are: (1) whether, in the present context, there was a material issue of fact as to the existence of a property interest in continued employment which gave rise to a due process right to notice and hearing under the Fourteenth Amendment before that employment could be terminated; and (2)

---

1. Hadley suffered a nervous breakdown which required hospitalization and for which he requested a medical leave of absence. His breakdown was allegedly due to the publicity surrounding the criminal investigation prior to his termination.

whether there was a material issue of fact as to the existence of a liberty interest which gave rise to a due process right to notice and hearing under the Fourteenth Amendment.

With regard to the granting of summary judgment, our circuit has stated that:

"Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case demonstrate that, except as to the amount of damages, 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' F.R.Civ.P. 56(c).

\*    \*    \*    \*    \*    \*

"The party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. The issue of material fact required to be present need not be resolved conclusively in favor of the party asserting its existence, but the movant need only show that sufficient evidence supporting the claimed factual dispute does not require a jury or judge at trial to resolve the parties' differing versions of the truth. All inferences to be drawn from the facts contained in the affidavits, exhibits, and depositions are to be drawn in favor of the nonmovant.... Upon review of a summary judgment we are obliged to review the entire record in the light most favorable to the opponent of the movant."

*Cedillo v. Int'l Ass'n of Bridge, Etc.,* 603 F.2d 7, 9, 10–11 (7th Cir.1979) (citations omitted). With these standards in mind we can now review the facts to determine whether the plaintiff raised a material issue of fact as to the existence of either a property interest, or a liberty interest.

### A.

The Supreme Court stated in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that:

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite."

408 U.S. at 569–70, 92 S.Ct. at 2705 (footnote omitted). The key, therefore, is the "nature" of the interest at stake.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

\*    \*    \*    \*    \*    \*

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Id.* at 577, 92 S.Ct. at 2709.

Hadley asserts that he had a legitimate expectation of job security rising to the level of a property interest protected by the Due Process Clause of the Fourteenth Amendment. He does not claim that this property interest arose out of any contract or statute. This, however, is not fatal to his claim since the Supreme Court, in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), recognized the possibility of "*de facto*" tenure which could give rise to a property interest.

*Perry* involved a non-tenured professor who, after teaching in the Texas state college system for ten years, was denied a renewal of his annual one-year contract without a prior hearing. Notwithstanding the fact that the college system did not have a formal tenure procedure, he alleged that he had a property interest which, "though not secured by a formal contractual tenure provision, was secured by a no less binding understanding fostered by the college administration. In particular, the respondent alleged that the college had a *de facto* tenure program, and that he had ten-

ure under that program." 408 U.S. at 599–600, 92 S.Ct. at 2698–99. The plaintiff in *Perry* based his assertion of *de facto* tenure on his employer's official Faculty Guide, which contained a provision which stated that a faculty member should feel secure that he had permanent tenure as long as his services were satisfactory and he displayed a cooperative attitude toward his co-workers. *Id.* at 600, 92 S.Ct. at 2699.

The *Perry* Court defined the nature of a protected property interest as follows:

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."

*Id.* at 601, 92 S.Ct. at 2699. The Court, in its application of this standard to the plaintiff's claim of *de facto* tenure, stated that "there may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure." *Id.* at 602, 92 S.Ct. at 2700. It concluded that the plaintiff "must be given an opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution.'" *Id.* at 603, 92 S.Ct. at 2700 (*quoting Sindermann v. Perry*, 430 F.2d 939, 943 (5th Cir. 1970)).

Hadley claims that, like the plaintiff in *Perry,* he had *de facto* tenure with Du Page County and therefore had a property interest which was deserving of protection under the Fourteenth Amendment Due Process Clause. He presents three separate arguments for his assertion of *de facto* tenure: (1) that he was given assurances by several individual Board members that he would retain his position as long as his job performance was satisfactory; (2) that Du Page County had an unwritten policy of not firing long-standing employees without a hearing; and (3) that he had a reasonable expectation based on his fourteen years of continuous and satisfactory job performance.

▬▬ Hadley's affidavit asserted that he had been given verbal assurances of job security.

"During all of his said employment, affiant was assured by the then incumbent members of the Du Page County Board and his other superiors, that his job as Superintendent of Public Works was secure and would not be terminated so long as affiant performed his duties in an efficient and satisfactory manner."

These assurances by Board members and superiors fail to establish a property interest in continued employment, however, as individual members of a county board in Illinois *do not* have the authority to bind a county to contracts. *See County of Stephenson v. Bradley and Bradley, Inc.,* 2 Ill.App.3d 421, 275 N.E.2d 675 (1971); *County of Will v. George,* 103 Ill.App.3d 1016, 59 Ill.Dec. 264, 431 N.E.2d 765 (1982); *Sexton v. Cook County,* 114 Ill. 174, 28 N.E. 608 (1885); *Cawley v. The People,* 95 Ill. 249 (1880); and Ill.Rev.Stat. ch. 34, § 302 (1972). To create a justifiable and reasonable expectation of job security, and thereby establish a property interest, there must be a mutually explicit understanding between the parties. *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699; *Webster v. Redmond,* 599 F.2d 793, 801 n. 13 (7th Cir.1979), *cert. denied sub nom., Webster v. Board of Education of the City of Chicago,* 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980). No property interest can arise from the above-mentioned assurances since the County Board is not bound by the unofficial acts and statements of its individual members, and therefore cannot be a party to any mutually explicit understanding; where the mutuality of the parties' understanding is required to meet the standards set forth in both *Roth* and *Perry.* Cf. *Fiorentino v. United States,* 607 F.2d 963 (Ct.Cl.1979), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980); and *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Any claim of entitlement to public employment based on these assurances was, at best, only a unilateral expectation which is insufficient to support a property interest. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Since mutuality would require an assurance from the County

Board itself, and since there has been no showing that the County Board ever officially made such an offer or promise of continued employment, Hadley's attempt to establish a property interest based on the unauthorized statements of individual Board members must fail.

Apart from these assurances, Hadley also claims that Du Page County had an unwritten policy of not firing employees absent a hearing. In his affidavit he asserted:

"Subsequent to affiant's termination on or about December 20, 1978, without just cause and without a hearing, the County of Du Page formally adopted a code of personnel policy which in fact merely codified and formalized the existing grievance procedures which formed the basis for affiant's belief and expectancy that he would be accorded prior notice and a prior hearing as to any basis for dissatisfaction with the performance of his duties as Superintendent of Public Works."

At the outset it should be pointed out that Hadley fails to substantiate this affirmation in any way. In his brief he indicates that this averment is uncontested. The fact that this general and non-specific statement is uncontested is of no real advantage to Hadley since Federal Rule of Civil Procedure 56 specifically states:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial."

Fed.R.Civ.P. 56(e) (emphasis added). Hadley's affidavit is nothing more than a mere allegation that these policies existed at the time of his termination. It appears to this court that Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it

requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted. Hadley's affidavit falls far short of this, as it fails to demonstrate the existence, at the time of his termination, of any personnel policy covering the procedures to be followed when dismissing an employee. *Cf. Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1103 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982).

Assuming for the sake of argument, however, that the personnel policy adopted 1½ years after Hadley's dismissal actually existed in an unwritten form at the time of his termination, Hadley still fails to establish a property interest in his continued employment since that personnel policy excluded department heads, like Hadley, from its protection. Under Illinois law, Hadley, as Superintendent of Public Works, was categorized as an unclassified service employee.[2] The personnel policy referred to by Hadley specifically created a procedure governing the hearing rights of employees in the unclassified service. It provides as follows:

"Employees in the unclassified service, as defined in Chapter 34, Section 860–3, Illinois Revised Statutes, do not have the right of appeal to the Personnel Policy Commission. They do, however, have the right of appeal to the Executive Committee of the County Board *except that this provision shall not apply to Department Managers,* their chief deputies, assistant chief deputies and first assistants and second assistants to department managers."

Du Page County Board Personnel Policy, ch. 6 § 6.5 (1981) (emphasis added).

This provision specifically excluded Hadley from the protection given to *classified employees* that their "employment [would] continue if [their] work [had] been satisfac-

2. "860–3 Classified and unclassified service
  "§ 3. The county service shall be divided into the classified and unclassified service. All offices and positions of the county shall be in the classified service unless specifically designated as being in the unclassified service by this Act.

Positions in the unclassified service shall include the following:
  \*   \*   \*   \*   \*   \*
  "(2) department managers;"
Ill.Ann.Stat. ch. 34, § 860–3 (Smith-Hurd Supp. 1983).

tory ...." Du Page County Board Personnel Policy, ch. 2, § 2.1 (1981). In addition, since Hadley was both an unclassified service employee and a Department Manager, § 6.5 barred him from receiving the protection which other unclassified employees were given, that is, the right to appeal to the Executive Committee of the County Board. Note that § 6.5 states: "except that this provision shall not apply to Department Managers ...." Therefore, Hadley had no procedural rights under the personnel policy adopted by the County Board after his dismissal. Absent such procedural rights, he was essentially an employee at will without a legitimate expectation of continued employment and therefore was without a property interest protectable under the Fourteenth Amendment. *See, e.g., Abraham v. Pekarski,* 537 F.Supp. 858, 869 (E.D.Pa.1982); and *Bollow,* 650 F.2d at 1100 n. 6.

■ Even if we were to agree that Hadley did have the right to appeal to the Executive Committee (which we do not), that procedural right would not give rise to a property interest protected under the Fourteenth Amendment. As we recently stated in *Lyznicki v. Bd. of Ed., Sch. Dist. 167, Cook Cty.,* 707 F.2d 949, 952 (7th Cir. 1983):

"A mere right to notice and a hearing, which places no more constraint on the employer's freedom of action than is inherent in having to confront the employee in a public forum, does not change the essential character of the employment relationship as one of employment at will; it does not convert it into a form of tenure employment and thus create a Fourteenth Amendment property right. There is too much authority to this effect in this circuit, see, e.g., *Endicott v. Huddleston,* 644 F.2d 1208, 1214 (7th Cir. 1980), for us to regard the question as an open one."

Thus, if the County's personnel policy did give Hadley the right to a hearing, that alone would not give him a property interest cognizable under the Fourteenth Amendment. This is especially true since the plaintiff, according to the district court's decision, apparently never requested a hearing, Dist.Ct. memo. dec. at 2, and now seems to have refused to participate in a hearing offered by the Du Page County Board, Plaintiff-Appellant's brief at 7.

■ Finally, the plaintiff appears to argue that the mere fact of his employment with Du Page County for fourteen continuous years gives rise to an entitlement of continued employment and therefore a property interest under the Fourteenth Amendment. We hold this argument to be without merit. "Longevity alone does not create a property interest." *Bollow,* 650 F.2d at 1099. *See also Grimes v. Eastern Illinois University,* 710 F.2d 386, 387 (7th Cir.1983).

Thus, Hadley has failed to establish the mutually explicit understanding of entitlement to the benefit of continued employment with Du Page County necessary in order to give rise to a property interest, and therefore has failed to establish *de facto* tenure under *Perry.* As the district court stated: "Hadley's subjective expectation of continued employment, if any, was purely unilateral and as such is insufficient to state a property interest protected by the Fourteenth Amendment." Dist.Ct. memo. dec. at 5. *See Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; and *Uptown People's Com., Etc. v. Bd. of Com'rs, Etc.,* 647 F.2d 727, 734 (7th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 328, 70 L.Ed.2d 167 (1981). Summary judgment was properly granted on Hadley's claim of a property interest in his continued employment with Du Page County.

### B.

Hadley also alleges that he had a right to a due process hearing under the Fourteenth Amendment because of the County's violation of his liberty interest.

"The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities."

*Lipp v. Board of Education of City of Chicago,* 470 F.2d 802, 805 (7th Cir.1972);

*Board of Regents v. Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707 (1972). The Seventh Circuit qualified the preceding statement by stating:

> "But not every remark which may arguably affect one's reputation violates due process if made by a government official without a hearing, for the fourteenth amendment protects only against charges that 'might seriously damage [one's] standing and associations in his community.' "

*Lipp,* 470 F.2d at 805 (*quoting Roth,* 408 U.S. at 573, 92 S.Ct. at 2707).

■ Hadley cites to 43 newspaper articles in which he asserts that the defendants' actions and statements relating to his termination resulted in a "stigma" to his reputation and thereby gave rise to a right to a hearing under the Fourteenth Amendment. A careful examination of these articles leads us to a different conclusion. In the first instance, our review indicates that a majority of the articles are attributable to sources other than the defendants in the present action. In addition, many of the articles make no reference to Hadley. There is, however, a third group of articles which are both attributable, in part, to one or more of the defendants and do mention Hadley by name, but contrary to Hadley's contentions, the statements attributable to the defendants which refer to Hadley are not stigmatizing.

The only reason ever given for Hadley's dismissal was his failure to meet the level of management skill required to properly and efficiently administer the Department of Public Works. In fact, when Hadley was fired and the reasons were announced, defendant Knuepfer stressed that the firing was due to Hadley's dismal record of management or mismanagement rather than any pending criminal indictments or his health. All of the articles which quote Mr. Knuepfer, or any other defendant on the subject of Hadley's dismissal, clearly indicate that the reason for his termination was his failure to adequately manage the department and not because of any criminal investigation or health problems.

The Seventh Circuit has taken the position that a mere charge of mismanagement is not enough to give rise to a liberty interest requiring a hearing.

> "We are satisfied that plaintiff has failed to state a claim under either branch of the *Roth* liberty test. An unelaborated charge of 'incompetence, neglect of duty and malfeasance of office' is of a different order of magnitude than charges of dishonesty, immorality, disloyalty, Communism, subversive activities, alcoholism or narcotics violations."

*Adams v. Walker,* 492 F.2d 1003, 1008–09 (7th Cir.1974). In *Paige v. Harris,* 584 F.2d 178 (7th Cir.1978) our court stated that:

> "charges of inadequate performance in the areas of 'Technical Expertise and Poor Judgment' and 'Supervisory Performance' and the alleged facts behind the charges, do not rise to the level of the 'degrading' and 'unsavory' charges which would 'expose him to public embarrassment and ridicule . . . .' "

*Id.* at 184 (*quoting Wisconsin v. Constantineau,* 400 U.S. 433, 436–37, 91 S.Ct. 507, 509–10, 27 L.Ed.2d 515 (1971)). The court continued by stating:

> "The cases cited in *Roth* 'involved charges of chronic alcoholism or association with subversive organizations, and . . . by "stigma" the Court was "thinking of something considerably graver than a charge of failure to perform a particular job lying within the employee's power to correct." [*Russell v. Hodges,* 470 F.2d 212 (2d Cir.1972) ] at 217.' "

*Paige,* 584 F.2d at 184 (*quoting Schwartz v. Thompson,* 497 F.2d 430, 432 (2d Cir.1974)). *See also Abeyta v. Town of Taos,* 499 F.2d 323, 327 (10th Cir.1974).

■ Hadley takes particular issue with the following paragraph which appeared in a newspaper article six days after his dismissal.

> "While announcing Hadley's firing last week, Knuepfer stressed that his action was based not on any pending criminal indictments, but rather on Hadley's record of management, or mismanagement."

Daily Journal (Dec. 26, 1978). He argues that Board Chairman Knuepfer's citation to "any pending criminal indictments" in his qualification of the reasons for Hadley's termination, was stigmatizing. According to Hadley, since no grand jury indictments ever actually issued, the mere reference to "pending" criminal indictments was stigmatizing to his reputation. Hadley misconstrues Chairman Knuepfer's use of this qualifying phrase. By referring to "any pending criminal indictments," Knuepfer was attempting to make it eminently clear that the discharge was due to business and administrative mismanagement and not to any possible criminal activity. The fact that he used the words *any pending* criminal indictments" indicates that no criminal indictments had actually issued but that an on-going investigation into the activity of the Public Works Department existed and that, as the newspaper columns had previously indicated, criminal charges might result from that investigation. Thus, all Knuepfer's statement did was emphasize that the sole reason for Hadley's termination was his failure to adequately manage the Department. Possibly a trained public relations expert could have enunciated the reason for Hadley's discharge more tactfully, however, the language actually used was not, in itself, stigmatizing.

Hadley also argues that defendant Knuepfer actually meant "criminal" mismanagement when he used the term "mismanagement." To support this argument he quotes an article printed on November 24, 1980, almost two years after Hadley's termination. That article states:

> "Knuepfer also mentioned the falsification of reports submitted to the Illinois Environmental Protection Agency (EPA) as evidence of mismanagement."

Suburban Trib (Nov. 24, 1980). Hadley claims that this statement indicates the particular meaning Knuepfer intended to convey in his use of the word "mismanagement," i.e., that Hadley was involved in criminal or dishonest activity. The conveyance of this meaning, according to Hadley, so significantly damaged his reputation that a due process hearing was required, under the Fourteenth Amendment, in order to give him the opportunity to clear his name.

There are two problems with Hadley's argument: (1) the length of time between Hadley's termination and the article; and (2) the clear and unambiguous reasons enunciated at the time of Hadley's termination. First of all, in order for a slur on Hadley's reputation to give rise to a liberty interest requiring a due process hearing, it must occur at or near the time of Hadley's termination since that is when the liberty interest arises, if at all. As the Supreme Court stated in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976):

> "Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; *the defamation had to occur in the course of the termination of employment.*"

*Id.* at 710, 96 S.Ct. at 1165 (emphasis added). Interpreting the *Davis* decision, our court stated:

> "stigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found *in conjunction* state a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process."

*Colaizzi v. Walker*, 542 F.2d 969, 973 (7th Cir.1976), *cert. denied*, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977) (emphasis original). This has become known as the "stigma plus" test. The key, therefore, is that the defamation must "occur in the course of the termination of employment." *Davis*, 424 U.S. at 710, 96 S.Ct. at 1165. Thus, "[t]here comes a point in time when post termination publication of defamation becomes sufficiently remote from the termination itself so as to make it no longer within 'the course of termination of employment,'" thereby eviscerating the nexus required by the stigma plus test. *Duggan v. Town of Ocean City*, 516 F.Supp. 1081, 1085

(D.Md.1981) (*quoting Davis,* 424 U.S. at 710, 96 S.Ct. at 1165). *Cf. Owen v. City of Independence,* 445 U.S. 622, 633–34 n. 13, 100 S.Ct. 1398, 1406–07 n. 13, 63 L.Ed.2d 673 (1980) (impliedly recognizing that the timing of publicizing alleged defamation is a relevant factor in assessing the existence of a liberty interest). We hold that Knuepfer's statement, almost two years after Hadley's termination, does not give rise to a liberty interest since the requisite nexus between the allegedly stigmatizing statement and the date of Hadley's dismissal is nonexistent, i.e., it was too remote in time to meet the stigma plus test. Although Knuepfer's statement might be defamatory, defamation alone does not give rise to a liberty interest protected by the Fourteenth Amendment. *See Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976); and *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976).

Even if we assume, for the sake of argument, that the requisite nexus existed, the articles published *at the time* of Hadley's termination are unambiguous. The stated reason for his dismissal was mismanagement and not "any pending criminal indictments" or on-going criminal investigation. Thus, the reasons given for Hadley's termination do not include any inference of dishonest or criminal misconduct. Therefore, Hadley's citation to a statement made some two years after his termination fails to support his argument. It must be remembered that the present appeal only deals with the question of whether Hadley had a constitutional right to a hearing and does not decide whether he had or has other state remedies available.

Finally, Hadley argues that he had a right to a hearing to clear his name since his discharge occurred in the "midst of defamatory charges" against himself, that is, his dismissal took place during an "entirely stigmatizing atmosphere." We hold that this argument is without merit. Because this suit is based on 42 U.S.C. § 1983, Hadley is required to allege governmental action which infringed upon his particular rights. If his injury does not result from governmental action, then he has no cause of action against the defendants under that

section. The plaintiff's pleadings and affidavits have failed to establish that it was *the defendants' actions or statements* that resulted in his alleged deprivation of due process as he has failed to cite a specific statement made by the defendants which resulted in any "stigma" to his reputation.

■ Turning now to the second prong of the *Roth* analysis as explained in *Lipp* (i.e., his freedom to take advantage of other employment opportunities), we recognize that the present termination and the reasons given therefore have affected, and may in the future affect, Hadley's employment opportunities.

> "But not every negative effect upon one's attractiveness to future employers violates due process if it results without a hearing. If the government were to deny a person a license necessary to practice his profession, *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), or were to diminish his chances of obtaining employment significantly, *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7[, 10], 60 L.Ed. 131 (1915), the due process clause might operate to require a hearing."

*Lipp,* 470 F.2d at 805. The stated reason of mismanagement, however, while it may affect his desirability does not foreclose other employment opportunities and therefore did not require the County Board to provide a hearing. As the district court held in the present case,

> "Public employees must be amenable to discharge if they fail to perform their duties adequately, and public officials must be able to tell the truth.
>
> \* \* \* \* \* \*
>
> "Clearly, an explanation of termination of employment for mismanagement cannot be held to be constitutionally stigmatizing. Any employment discharge will carry with it some damage to the employee's reputation, but that does not, as such, violate any constitutional right."

Dist.Ct. memo. dec. at 7, 8.

For the foregoing reasons, we hold that Hadley had neither a property nor a liberty

interest as defined in the Fourteenth Amendment Due Process Clause, and he therefore failed to establish a right to a hearing. Thus, we hold that the district court correctly granted summary judgment to the defendants. AFFIRMED.