Anne L. SUDEIKIS and Stephen J. Kabala, Plaintiffs-Appellants,

v.

CHICAGO TRANSIT AUTHORITY, a Municipal corporation; James R. Quinn, Individually and as Vice-Chairman of the Chicago Transit Authority Board; Donald J. Walsh, Ernie Banks, Wallace D. Johnson, and Lawrence G. Sucsy, as Members of the Chicago Transit Authority Board; and Terrell W. Hill, Defendants-Appellees.

No. 84–1355.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1985.
Decided Oct. 2, 1985.

Robert P. Cummins, Chicago, Ill., for plaintiffs-appellants.

Joseph P. Della Maria, Jr., Rothschild, Barry & Myers, Chicago, Ill., for defendants-appellees.

Before CUDAHY and COFFEY, Circuit Judges, and PECK, Senior Circuit Judge.[1]

JOHN W. PECK, Senior Circuit Judge.

Plaintiffs-appellants Anne Sudeikis (Sudeikis) and Stephen Kabala (Kabala) appeal from the dismissal of their consolidated actions stemming from a 1975 employment dispute with defendant-appellee Chicago Transit Authority (CTA). The trial court ruled in dismissing the first of these actions, filed in 1982, which sought enforcement of a 1975 settlement decree, that it had not been brought within a reasonable time and therefore, was barred by Federal Rule of Civil Procedure (Fed.R.Civ.P.)

60(b)(6). The court also dismissed the second of the consolidated actions under 42 U.S.C. § 1983, finding that that complaint did not state a § 1983 cause of action.[2] Finally, the court dismissed appellants' pendent state claim, since with the federal claims dismissed, the state claim did not provide an independent basis for federal jurisdiction. We affirm.

### I.

In 1975, Sudiekis served as CTA's supervisor of customer services. Kabala was manager of CTA's marketing department, and apparently was Sudeikis's supervisor. In the course of her employment, Sudeikis made unauthorized statements to the press. CTA believed that Kabala had acquiesced in the statements. In April 1975, CTA terminated both Kabala and Sudeikis, allegedly because of the unauthorized press statements. Sudeikis and Kabala filed an action against CTA that July in the United States District Court for the Northern District of Illinois, alleging that their termination had violated their constitutional rights. In August of that year the parties entered an agreement settling the dispute. The agreement provided that Sudeikis and Kabala would be reinstated to their positions, with back pay and benefits. The agreement further provided that Sudeikis and Kabala would then immediately resign; they would, however, receive severance pay through mid-October 1975, plus any vacation pay to which they were entitled. In addition, CTA agreed to pay Sudeikis's and Kabala's attorneys' fees and other legal costs, and Sudeikis and Kabala and CTA released each other from any further liability. Pursuant to the settlement, the federal lawsuit was dismissed with the court's consent.

---

1. Honorable John W. Peck of the Sixth Circuit, sitting by designation.

2. 42 U.S.C. § 1983, which was passed in 1871 as part of the federal government's effort to secure equal rights for black citizens in the post-Civil War era, states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The settlement agreement approved by the district court did not include any language providing what sort of response CTA would give prospective employers seeking information on Sudeikis and Kabala. The parties have stipulated, however, in the course of the present litigation, that they had agreed to the contents of the letters of recommendation which CTA would send. The agreed-to letters of recommendation were extremely favorable; they described the "creativity," "efficiency and skill," and "unending dedication" of appellants. The parties have stipulated that they agreed that CTA would send this letter "and nothing more" to appellants' potential employers.

In appellants' view, however, CTA has not kept this part of the bargain. Appellants also allege that CTA has responded to some employment inquiries with defamatory statements against them. Appellants allege that CTA has responded to employment inquiries with a flat statement that Sudeikis and Kabala once worked for it but do so no longer, or even with the ominous sounding (and untrue) statement that it is not at liberty to discuss their employment records. According to appellants, CTA's alleged failure to observe the settlement agreement has restricted their employment opportunities severely.

In 1978, Sudeikis filed a suit against CTA in an Illinois state court, alleging breach of the settlement agreement. Her pursuit of this suit has been desultory at best. The trial court dismissed the action, but a state appellate court reversed the dismissal and remanded the case for trial in 1980. Since then, Sudeikis has not pursued this suit; instead, by her own account, she has "spent considerable time and energy" seeking an attorney satisfactory to herself.

In 1983, Sudeikis found a new attorney and she and Kabala filed an action in federal court seeking enforcement of the settlement agreement, in spite of the fact that Sudeikis had an action seeking the same relief pending in state court. While this action was pending, Sudeikis and Kabala filed yet another action, again in federal court. This action, brought under 42 U.S.C. § 1983, alleged that CTA had violated appellants' constitutional rights by failing to follow the settlement agreement and by making slanderous statements against appellants to potential employers. This behavior, appellants alleged, was retaliation against appellants' exercise of their first amendment right to free speech and their right, guaranteed by the Illinois constitution, to seek redress of grievances. The action also alleged deprivation of constitutionally protected liberty and property interests through failure to observe the settlement agreement.

The two federal suits were consolidated for trial, and appellees filed a motion to dismiss both. In granting this motion as to Kabala's action to enforce the settlement agreement, the court noted that FED.R. CIV.P. 60(b)(6) has been interpreted as granting district courts which dismiss actions in accordance with settlement agreements jurisdiction over suits to enforce the agreements, provided the suits are brought "within a reasonable time." *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). Further noting that the definition of a "reasonable time" is decided on a case-by-case basis, the court concluded that Kabala's § 1983 suit to enforce a 1975 settlement agreement was not timely. The court conceded that Kabala had submitted an affidavit alleging a 1982 violation of the settlement agreement, but called this single alleged violation "too slim a reed" on which to base a suit to enforce an agreement seven years old when the suit was filed.

The court found, for similar reasons, that appellant Sudeikis's suit was also untimely. In addition, the court held that she could not use the federal courts "to escape the effects of her inattention to the state court suit." Accordingly, Sudeikis's enforcement action was dismissed as well.

The court also dismissed the action stating constitutional claims. It cited *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), for the proposition that

the stigma arising from allegedly defamatory statements by a governmental instrumentality is not actionable in the absence of an actual termination from government employment. Since the complained-of CTA conduct was not connected with Sudeikis's and Kabala's termination, it was not actionable, the court held. Finally, the court dismissed the count alleging violation of the right to seek redress of grievances guaranteed by the Illinois constitution on the ground that it alone could not provide an independent basis for federal jurisdiction. Kabala and Sudeikis then filed a timely appeal to this court from the dismissal of the consolidated action.

## II.

### A.

We consider first whether the trial court was correct in dismissing the enforcement actions as untimely. Our standard is whether the trial court abused its discretion. *See Vincent v. Reynolds Memorial Hospital, Inc.*, 728 F.2d 250, 251 (4th Cir. 1984); *Harman v. Pauley*, 678 F.2d 479, 480 (4th Cir.1982). There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable. *Compare Mungin v. Florida East Coast Ry. Co.*, 318 F.Supp. 720 (M.D.Fla. 1970), *aff'd* 441 F.2d 728 (5th Cir.) (per curiam), *cert. denied sub nom. Howard v. Florida East Coast Ry. Co.*, 404 U.S. 897, 92 S.Ct. 203, 30 L.Ed.2d 175 (1971) (five months) *with Pierre v. Bernuth, Lembcke Co.*, 20 F.R.D. 116 (S.D.N.Y.1956) (three years).

The delay here was one of eight full years. In no reported case has Rule 60(b)(6) relief been granted after so long a delay. Nor does the record establish any excuse for appellants' long delay. They

necessarily became aware, very soon after they left CTA's employment, that CTA was not sending the desired letters of recommendation. Sudeikis, moreover, has been involved in prolonged litigation in the state courts over this very issue. As far as the record indicates, her state court action has never been dismissed. The district court did not base its decision on abstention doctrine grounds,[3] nor do we; but we agree with the district court that the filing of the state court action has a bearing on the reasonableness of Sudeikis's delay in filing the federal action. Presumably, she knew that she had a claim she could advance in the federal courts at the time she filed her state action. It would be a novel doctrine to assert that one could effectively toll time limitations in the federal courts by first filing and then effectively abandoning a state action. Kabala, too, presumably knew that the agreement was being breached almost as soon as it was entered. This we must take as true on his own allegation since like Sudeikis, he asserts that CTA never sent the agreed-to letter of recommendation.

The prejudice to a party in attempting to defend a lawsuit based on events which occurred eight years ago is obvious. For CTA to locate witnesses to events which occurred then, and for these witnesses to recollect these rather remote events, would doubtless prove difficult. Nor have Sudeikis and Kabala offered any reasonable explanation for their delay, such as the plaintiff in *Pierre, supra* (who had been committed to a mental institution during the pendency of his suit) offered. Given the long delay, the lack of an explanation for it, and the potential prejudice to appellees, not to mention the possibility that Sudeikis's conduct is an exercise in forum-shopping, we cannot conclude that the trial court abused its discretion in ruling the 60(b)(6) enforcement action untimely.

---

3. The fact that a state lawsuit on an issue is pending is not generally a bar to a federal suit on the same issue. *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14–16, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

**B.**

We turn now to the question of whether the trial court was correct in ruling that appellants' § 1983 action failed to state a claim on which relief can be granted. Appellants alleged two federal constitutional violations by CTA in this action: deprivation of their liberty and property interests through violation of the settlement agreement's provisions respecting letters of recommendation, and defamation, in retaliation for their exercise of their constitutionally protected right to criticize CTA, by supplying false and misleading information to potential employees.

The first of these claims amounts to nothing more than a breach of contract action. It has long been settled that a mere breach of contract by the government does not give rise to a constitutional claim. *See, e.g., Manila Investment Co. v. Trammell,* 239 U.S. 31, 36 S.Ct. 12, 60 L.Ed. 129 (1915).

As to the second claim, defamation associated with termination from government employment may, under certain circumstances, constitute a constitutional deprivation. *See, e.g., Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1138–39 (7th Cir.1984); *Hadley v. County of Du Page,* 715 F.2d 1238, 1245–47 (7th Cir.1983); *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976). But the defamation, to be actionable, must "occur in the course of the termination of employment." *Davis, supra,* 424 U.S. at 710, 96 S.Ct. at 1165; *Hadley, supra,* 715 F.2d at 1246–47. The allegedly defamatory statements CTA made to appellants' potential employers occurred after they had been terminated, filed a lawsuit challenging the terminations, and settled the suit. The situation is thus markedly different from that in *Colaizzi, supra,* in which the allegedly defamatory statements were made in a

press release announcing the plaintiffs' discharge, and is more closely analogous to that in *Hadley v. County of Du Page,* in which plaintiff's suit was not allowed because the alleged defamation occurred almost two years after his discharge. While the length of time between the discharges and the allegedly defamatory statements may not have been as long in the instant case as it was in *Hadley,* the difference is not a crucial one.[4] As in *Hadley,* the termination of appellants was a closed chapter at the time the alleged defamation occurred. As Judge Coffey, writing for this court in *Hadley,* stated, in the absence of "the requisite nexus between the allegedly stigmatizing statement and ... dismissal, ... defamation alone does not give rise to a liberty interest protected by the Fourteenth Amendment." 715 F.2d at 1247.

**C.**

The district court correctly held that the Illinois constitutional claim could not provide an independent basis for federal jurisdiction, once it was decided that the federal claims lacked substance. As the Supreme Court said in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966): "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court." *Id.* at 725, 86 S.Ct. at 1138.

**III.**

The judgment of the district court is affirmed. The parties will bear their own costs upon appeal.

CUDAHY, Circuit Judge, concurring:

I agree with the majority's analysis and disposition of the claim for enforcement of the settlement agreement.

I do not, however, agree with part of the analysis of the section 1983 claim which apparently holds that association with termination from government employment is necessary to render a defamation action-

---

**4.** Appellants' complaint does not specify precisely when each of the allegedly defamatory statements was made. It does make clear, however, that the statements were made after the termination occurred and the agreement settling the dispute was entered.

able. Defamations allegedly resulting in exclusions from employment but apparently not associated with termination were upheld as actionable under section 1983 in *Larry v. Lawler*, 605 F.2d 954 (7th Cir. 1978) and in *Bone v. City of Lafayette*, 763 F.2d 295 (7th Cir.1985). This issue may be before this court *en banc* in a rehearing of *Perry v. FBI*, 759 F.2d 1271 (7th Cir.1985).

I concur in the result of this branch of the case, however, since I do not believe there has been a sufficient allegation of defamation resulting in exclusion from employment. I am not generally in favor of complicating the pleading requirements under the Federal Rules of Civil Procedure. Here, however, plaintiffs neither claimed that defendants had affirmatively defamed them nor alleged that they had been entirely excluded from a profession or trade so as to implicate a liberty interest. For my part, I believe that a section 1983 action for defamation—particularly where there is no contemporaneous termination—generally does not state a claim unless it alleges that the government's action has made the plaintiff "all but unemployable," and it appears that there is at least some chance that the plaintiff will be able to call up a set of facts that will support that claim.