**Marvin KAGAN, Plaintiff-Appellant,**

v.

**CATERPILLAR TRACTOR CO., et al.,
Defendants-Appellees.**

No. 85–2365.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1986.

Decided July 7, 1986.

Marc M. Pekay, Chicago, Ill., for plaintiff-appellant.

J. Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants-appellees.

Before COFFEY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

COFFEY, Circuit Judge.

The plaintiff-appellant, Marvin Kagan, appeals from the district court's order denying his motion to reconsider the court's refusal to reinstate his complaint. We affirm.

## I.

Marvin Kagan filed a complaint in November 1983 in the United States District Court for the Northern District of Illinois alleging that the defendants, Caterpillar Tractor Co. ("Caterpillar") and three Caterpillar employees, forced Kagan, then 60 years old, to take early retirement in violation of the Age Discrimination Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and also discriminated against Kagan because of his Jewish religious beliefs in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000(e) *et seq.* Attorneys John Gubbins, Emmanuel Krakauer, and Jerrold Morris each filed at least one appearance on behalf of Kagan.[1]

The district court, upon the defendant's motion, transferred the case to the Central District of Illinois, Peoria Division, pursuant to 28 U.S.C. § 1404(a). Following the transfer, the defendant filed a motion to dismiss the individual defendants because they had not been named in an administrative charge of discrimination, a prerequisite to either an ADEA or Title VII suit. In addition, Caterpillar asked the court to strike the plaintiff's prayer for punitive and compensatory damages on the grounds that they are not authorized under ADEA or Title VII actions. (Kagan's complaint also sought declaratory relief as well as backpay and lost pension benefits.) The court set April 27, 1984 as the due date for the plaintiff's response to the motion to dismiss and scheduled a pretrial conference for June 18, 1984. On May 15, almost three weeks after the date the response was due, attorney Gubbins advised the court by letter that the response would be filed "within the week," but a response was never filed. In view of the fact that Kagan's attorney failed to appear at the pretrial conference, the court attempted to contact each of the plaintiff's three attorneys of record, but "no one was available." The day following, the district court issued an oral order dismissing Kagan's action for lack of prosecution, and the plaintiff Kagan failed to appeal the court's dismissal order.

Approximately 10 weeks later, on August 29, Caterpillar filed a petition for costs and attorneys' fees it incurred as a result of "[t]he plaintiff's abuse of judicial process and bad faith," alleging that the plaintiff prosecuted his action as an effort to harass the defendants. In October, the district court scheduled a hearing on the defendants' petition for fees for December 14, 1984. Three days before the scheduled hearing, on December 11, attorney Mark Pekay filed an appearance on behalf of Kagan and filed a motion to reinstate the plaintiff's action. At the hearing, the court heard arguments on the plaintiff's motion to reinstate. Attorney John Gubbins stated that he had experienced many personal problems during the prior year, explaining that he contracted spinal meningitis that "knocked me out through January [1984]" and that the firm he was associated with, "fell apart" at the end of January 1984. He further advised the Court that he had three trials in a 60-day period in the spring of 1984, with one of the trials lasting five

---

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. Attorney Morris had represented Kagan "on and off" for 28 years. When Kagan contacted Morris regarding the filing of the law suit against Caterpillar, Morris advised Kagan that he "did not handle these types of matters" and suggested that Mr. Gubbins represent Kagan in his lawsuit against Caterpillar. Kagan retained Gubbins (and Krakauer, who was to assist Gubbins), but insisted that Morris also be included as an attorney of record in the Caterpillar lawsuit. According to Morris, Gubbins informed Morris that he (Gubbins) "would attend and handle any pretrial conferences, and he did not believe there was any need for [Morris] to personally appear based on the assurance of Gubbins that he would handle the matter."

weeks. The court asked Gubbins why there was no response filed to the defendant's motion to dismiss after advising the Court in May that a response would be filed in a week. Gubbins replied:

"I was in the middle of that five-week trial on May 18th. And I thought it was going to be over. It proceeded to go another two and a half weeks after that.

\* \* \* \* \* \*

So on May 18th when I told Magistrate Kauffman that I would have something in a week, I did have things in draft form by about the 25th, but I was still on trial. I just couldn't get to him, and I was on trial for a while—well, in the second week in June. I just—I could not get to him.

On that date in June that we were suppose [sic] to show up for the pretrial conference, Mr. Krakauer and I missed our signals."

Gubbins asserted that he received a letter in July from Morris discharging him due to the dismissal of Kagan's case, and Gubbins further stated, "I didn't get back to the court after I was fired because I thought I was fired." [2]

Kagan testified at the hearing, reciting that he had spoken to Mr. Gubbins in the latter part of June, 1984, and "he said he didn't make the hearing in Peoria but 'don't worry about it, nothing to be alarmed about it [sic].' " Kagan also related that he was working in Spartanburg, South Carolina, during the summer of 1984, and he learned of the dismissal of his complaint against Caterpillar from a neighbor in Peoria "towards the end of August" of 1984. According to Kagan, he subsequently received a letter from attorney Morris in the middle of July advising Kagan that he (Morris) was arranging for substitute counsel for Kagan. Kagan further testified that Morris failed to inform him at this time that his case had been dismissed, and when Kagan inquired regarding the substitution, a Mr. Heller in Morris' office advised him "that because of non-performance ... they were obtaining substitute counsel." Kagan stated that the attorney Morris initially contacted to act as substitute counsel declined to handle it, and in October, 1984, Kagan asked another attorney, Pekay, if he would "take on the case."

J. Stephen Poor, counsel for the defendants, filed an affidavit attached to the defendant's response to the plaintiff's motion to reinstate reciting that on August 29, 1984, he received a telephone call from a person who identified himself as Mark Pekay. According to the affidavit:

"Mr. Pekay stated, ... that he would shortly file his appearance on behalf of plaintiff Marvin Kagan in the above-captioned matter. Mr. Pekay stated that he was aware that the case had been dismissed and was aware that defendants had filed a motion for attorneys' fees. Mr. Pekay stated that he would file a motion to vacate the dismissal of the case."

The trial judge denied the plaintiff's motion to reinstate, explaining:

"I think that the first thing that is clear from the record that the conduct of the three attorneys who previously had been employed to represent the plaintiff in this case is absolutely incomprehensible to this court. I realize that lawyers have problems; judges do too. And we all have different periods in our life where we have illnesses, we have marital problems, we have problems with children, financial difficulties, whatever. But as a practicing attorney, when we agree to represent a client, any problems that we may be having personally will be set aside in terms of the matter in which we conduct ourselves in reference to a client. There is no other way that the profession can function.

... I am not only pointing the finger at Mr. Gubbins when I say that. Any attorney who enters his appearance in a case becomes responsible for that case,

---

**2.** The record is unclear what involvement Mr. Krakauer had with Kagan's case from the time it was filed in November 1983 until its dismissal in June 1984. Gubbins stated that Mr. Krakauer was also fired in July following the dismissal of Kagan's case.

whether you are the lead counsel or someone who is playing a less-active role.

\* \* \* \* \* \*

It is inconceivable to me that the plaintiff was not informed of the fact that his case had been dismissed. It is clear that he was not. I think, if anything, that aggravates the conduct of the attorneys in this case in any event.

We have the dismissal in June. We have the discovery by the defendant—excuse me, by the plaintiff in August that the case had been dismissed. We have Mr. Morris' letter of July. We have a considerable period of time elapsing before any indication is given to this court of any intention to seek to vacate or set aside or reconsider and, quite frankly, under the totality of the circumstances in this case, it is the court's feeling if I were to allow this case to be reinstated that I might as well throw out the rules of civil procedure and the local rules of this court out. I cannot. This court and I don't believe there is a court in the United States that can conduct business under these circumstances. So the motion to reinstate or vacate or reconsider is denied."

The plaintiff filed a motion to reconsider the court's denial of the motion to reinstate. In a subsequent hearing on the motion to reconsider, Jerrold Morris, who did not attend the prior hearing, testified that he learned from Kagan in late August 1984 that the case had been dismissed and thereafter made a number of attempts to discuss the case with Gubbins. Morris stated he contacted a law firm that declined to handle Kagan's case and thereafter arranged for Mr. Pekay to take over the case. Morris stated he was "not a specialist in labor relations" and did not have "the ability to appropriately and properly watch Mr. Gubbins." On cross-examination, Morris admitted that he failed to file a motion to vacate the entry of judgment or to alter or amend the judgment, even though he claimed to have learned of the dismissal in August. Morris further admitted that other than trying to contact Gubbins on nu-

merous occasions and attempting to find substitute counsel, he did fail to file any pleadings or documents with the district court or take other action on behalf of Kagan. The district court denied the motion to reconsider:

"I think it would be fair to say that if the only evidence before the court was the evidence leading up to the dismissal in June, that some type of a prompt notice or motion, some contact with the court with reference to that matter, I would not have any problem in saying that the case should be reinstated.

What concerns me about this situation is that apparently—or I should say even as late as August—what concerns me is that the plaintiff learned of this situation in August. At that time, the best that I can piece this together, he had contact with one of his attorneys of record, Mr. Morris.... But it appears that from late August until December 11th, I believe that's the date that the record reflects that the—Mr. Pekay entered his appearance and filed a notice—or a motion to reinstate. From late August to December 11, there was no contact with this court concerning any intention concerning the litigation other than the fact that was dead litigation.

\* \* \* \* \* \*

In this case, the court dismissed the action in June because of the failure of the plaintiff to appear. No action occurred from the plaintiff between that time and December 11th, and after August, the plaintiff himself had knowledge of the problem.

... But, in a situation such as this where we go from August to December 11th without having something done, it indicates to me that the plaintiff was either relying on the wrong counsel in an unreasonable fashion or not taking it in his own hands in terms of seeing that the proper action was taken at that time to expeditiously deal with this litigation. ... The bottom line on it is that I believe that not only attorneys of record but litigants have some duty to pursue in a

reasonably diligent manner the course of their litigation, and under the circumstances of case, even though the case at the time it was dismissed and at the time that the court in December ruled that the case should be dismissed, was still less than a year old. I don't believe that the district courts of this country can operate at all under circumstances as presented in this case. In affirming my ruling of December, I don't do that lightly. I don't do it happily. As I indicated, I have a very strong concern about people having their day in court. I just happen to believe that in this case, plaintiff had his opportunity for his day in court, and it did not have its day in court per se in terms of the trial or the pursuit of discovery because of a combination of his own actions and the actions of his attorneys. So, regretably, I am going to affirm my previous ruling."

Kagan appeals the trial court's order denying his motion to reconsider, arguing that the district court abused its discretion in dismissing and failing to reinstate plaintiff's case pursuant to Fed.R.Civ.P. 60(b).

## II.

Kagan contends that the district court abused its discretion in dismissing his action and refusing to reinstate, arguing that "[t]he plaintiff had no knowledge of nor did he participate in the gross derelictions of attorneys Gubbins and Krakauer" and also asserted that the trial judge failed to consider any less drastic alternatives to dismissing Kagan's action. Kagan also contends that Rule 60(b) allows a party one year to seek relief from a judgment order for excusable neglect, maintaining "the pathetic set of facts as related by attorney Gubbins creates such excusable neglect." According to Kagan, "[t]he district court's refusal to reinstate this matter after a short delay of less than four months is an abuse of the one-year rule...." Kagan finally contends that the "conduct of Mr. Gubbins and Mr. Krakauer, in the prosecution of this case, and in their failure to appear, constitutes such gross negligence

as to warrant the reinstatement of the case under Rule 60(b)(6)."

We initially note that plaintiff Kagan failed to appeal the June order dismissing his complaint for want of prosecution; rather, he waited until December 11th to file a motion to reinstate his case. While Kagan's motion to reinstate failed to cite any rule or statute as authority for the district court to reinstate the action, the district court treated Kagan's motion as brought pursuant to Fed.R.Civ.P. 60(b). Kagan never objected to the trial court's characterization of his motion as a Rule 60(b) motion and subsequently argued before the trial court and this court that Rule 60(b) justifies the reinstatement of Kagan's action against Caterpillar. Accordingly, we treat the plaintiff's motion to reinstate as a Fed.R.Civ.P. 60(b) motion for relief from a final judgment or order.

Rule 60(b) of the Federal Rules of Civil Procedure provides in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence, which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

"It is well-settled that Rule 60(b) cannot be used as a substitute for appeal."

*Wojton v. Marks,* 344 F.2d 222, 225 (7th Cir.1965). See also *Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207 (1950); *Andrews v. Heinhold Commodities,* 771 F.2d 184, 188 (7th Cir. 1985) ("A party cannot use Rule 60(b)(6) as a substitute for appeal."). As the court explained in *Pryor v. United States Postal Service,* 769 F.2d 281, 286 (5th Cir.1985):

> "The dismissal itself is not here appealed, however, as we have indicated. Rather, this appeal is taken from the district court's denial of relief under the 'motion to reinstate,' which we here treat as if it had been a Rule 60(b) motion for relief from the judgment of dismissal. 'However persuasive the plaintiffs' assertions of legal error might have been on a direct appeal, timely taken, our review of the plaintiffs' appeal in its present procedural posture is strictly limited to determining whether the district court's denial of the Rule 60(b) motion constituted an abuse of discretion.' *Chick Kam Choo v. Exxon Corp.,* 699 F.2d 693, 694 (5th Cir.1983) (citations omitted)."

Similarly, this court has stated with respect to our review of a district court's ruling on a Rule 60(b) motion, "we can only consider whether the denial of the motion was an abuse of discretion; we cannot reach the merits of the underlying judgment." *Marane, Inc. v. McDonald's Corp.,* 755 F.2d 106, 112 (7th Cir.1985). Thus, "our review of denial of Rule 60(b) relief [is] meaningfully narrower than would [be] our review on direct appeal of the underlying order from which relief was sought by the Rule 60(b) motion." *Pryor,* 769 F.2d at 286.

### A. *Excusable Neglect or Other Reasons Justifying Relief*

■ Rule 60(b)(1) permits the district court to relieve a party from final judgment or order for, *inter alia,* excusable neglect. The plaintiff asserts that the "pathetic set of facts as related by attorney Gubbins creates such excusable neglect" under the Rule to justify reinstatement.

Kagan's argument is interesting but contrary to the present state of the law. "Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Ben Sager Chemicals International v. E. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir. 1977). In *Pryor v. United States Postal Service,* the court was presented with a factual scenario nearly identical to that of the case at bar. The plaintiff in *Pryor* filed a complaint alleging racial discrimination in violation of Title VII. The trial court set a conference on the defendant's motion to dismiss for November 4, 1983, with the plaintiff's response due on October 23. The plaintiff's counsel failed to respond to the motion to dismiss, and neither the plaintiff nor his counsel appeared at the scheduled conference. The district court dismissed plaintiff's complaint with prejudice for lack of prosecution. The plaintiff received a notice of dismissal on November 18th and expressed his concern in a letter to the district court. The plaintiff subsequently was reassured by his counsel that the matter would be reinstated, and the plaintiff failed to pursue the matter any further with his counsel or the court. Nearly three months later on January 30, 1985, counsel for the plaintiff filed a "motion to retain on the docket," and one month later, he filed a supporting memorandum explaining that:

> "Counsel for plaintiff did appear [sic] for the scheduled hearing on November 4, 1983, but he was scheduled for a hearing at the same time 9:00 a.m. in 246 of Family State District Court. Counsel for Plaintiff called Judge James DeAnda's court—but was unable to reach the clerk of the court due to the line being busy, and at another time, no one answered the phone."

769 F.2d at 284. The court affirmed the district court's denial of Rule 60(b)(1) relief reasoning:

> "There is no indication in the record that appellant's counsel made any attempt to contact the district court in timely fashion upon discovery of the alleged scheduling conflict with a state court appear-

ance that he claims caused his absence from the November 4 motion conference, or that he timely sought a continuance. Nor is there any indication that counsel subsequently made any effort to contact the court to explain his absence until almost two months later.... We have expressly held that conflicts in scheduling do not provide sufficient excuse to warrant relief under Rule 60(b)(1). *See, e.g., Ad West Marketing, Inc. v. Hayes,* 745 F.2d 980, 984–85 (5th Cir.1984). Given this history, the absence of compelling or extraordinary circumstances, and our limited scope of review of the denial of Rule 60(b) relief, we are unwilling to reverse the trial court's denial of relief."

769 F.2d at 287.

In the present case, as in *Pryor,* our review of the record reveals that not one of Kagan's counsel (Gubbins, Krakauer, or Morris) ever made an attempt to contact the district court in a timely fashion when it became apparent that Gubbins' trial schedule would prevent him from attending the pretrial conference nor did any of Kagan's three attorneys make a timely effort to seek a continuance. Thereafter, the record discloses that Gubbins never made any attempt to contact the trial court to explain his absence. The plaintiff in *Pryor* immediately expressed his concern to the district court and the plaintiff's counsel went further and contacted the court two months after the dismissal in an effort to explain his absence from the conference, as contrasted with the present case, where neither Kagan nor any of his three attorneys (Gubbins, Krakauer, or Morris) contacted the district court on Kagan's behalf to explain why they had failed to appear at the pretrial conference, but instead did absolutely nothing to protect their client's interest until December 11th, almost six months after the dismissal. We take cognizance of and are sympathetic with the difficulties Gubbins encountered in his personal life during the period that Kagan's lawsuit was pending, but according to his own testimony, Gubbins was able to return to the courtroom and able to conduct three trials within a 60-day period in the spring of 1984. As the district court observed, "as a practicing attorney, when we agree to represent a client, any problems that we may be having personally will be set aside in terms of the matter in which we conduct ourselves in reference to a client. There is no other way that the profession can function." We agree with the cogent advice given by the District Court to the trial attorneys and hold that Gubbins' failure to pay attention to Kagan's lawsuit is inexcusable.

Trial judges have a responsibility to litigants to keep their court calendars as current as humanly possible. This is not an easy task in view of the nearly impossible demands placed on trial judges in the overburdened federal court system. For example, in the twelve-month period ending June 30, 1985, a total of 1,994 cases (both civil and criminal) were filed in the U.S. District Court for Central District of Illinois. Divided among the three district judges in the Central District, each judge is responsible for approximately 665 of the new cases filed in that time period, and as of June 30, 1985, the average number of cases pending on a district judge's calendar was 643. Thus, if a trial judge does not closely monitor his calendar and prevent needless delay, he would soon be buried beneath the pending case load.

Kagan asserts that the negligent conduct of his counsel should not be assessed against him and thus deprive him of his day in court. The United States Supreme Court rejected this very argument in *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962):

"There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, yet he cannot now avoid the consequences of the acts or omissions of this freely-selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the

acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer*, 101 U.S. [11 Otto] 320, 326, 25 L.Ed. 955."

*Id.* at 633–34, 82 S.Ct. at 1390. *See also, Tolliver v. Northrup*, 786 F.2d 316 (7th Cir.1986) ("a litigant is bound by his lawyer's acts"). The Supreme Court added in a footnote that:

> "[a] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the *defendant.*"

*Id.* at 634 n. 10, 82 S.Ct. at 1390 n. 10 (emphasis in original). This court very recently affirmed a district court's denial of Rule 60(b) relief where the plaintiff claimed her lawyer was to blame for her failure to answer pending interrogatories. In so holding, we stated, "Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common." *Tolliver*, at 319. In a somewhat analogous situation, the Supreme Court held in *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), that the failure to timely file a tax return is not excused by the taxpayer's reliance on an attorney. *Id.* 105 S.Ct. at 693. In *Boyle*, the court stated:

> "To say that it was 'reasonable' for the [taxpayer] to *assume* that the attorney would comply with the statute [establishing the filing deadline] may resolve the matter as between them, but not with respect to the [taxpayer's] obligations under the statute.... That the attorney, as the [taxpayer's] agent, was expected to attend to the matter does not

relieve the principal of his duty to comply with the statute."

*Id.* at 692–93.

Since Kagan voluntarily chose attorney Gubbins to represent him in this action, we hold that attorney Gubbins' involvement in another pending trial fails to provide the type of excusable neglect contemplated so as to warrant relief under Rule 60(b)(1) where Gubbins failed to: (1) appear at the scheduled pretrial conference or give a timely explanation for his absence; (2) even make the simple effort to advise the district court of his predicament; (3) respond to the defendant's motion to dismiss or give a timely excuse; (4) arrange for substitute counsel to appear at the pretrial conference on Kagan's behalf; or (5) seek leave of the court to be relieved of the obligation to represent Kagan.

■■■ Kagan also maintains that the conduct of Mr. Gubbins and Mr. Krakauer in the present case "constitutes such gross negligence as to warrant the reinstatement of the case" under Rule 60(b)(6). Rule 60(b)(6) "provides for extraordinary relief and requires a showing of exceptional circumstances." *Andrews*, 771 F.2d at 188. We do not agree that the present case, in which the plaintiff's lead counsel failed to attend to the plaintiff's litigation due to his involvement in a then-pending trial in another matter and failed to even advise the court of this fact in a timely fashion, constitutes such gross negligence or exceptional circumstances so as to justify the extraordinary relief available pursuant to Rule 60(b). Any attorney bears the ethical obligation to advise his client and the trial court of problems that arise in the course of representing the client, and an attorney beset by conflicts in scheduling should in a timely fashion ask leave of the court and his client to: (1) be relieved of the obligation to represent his client; (2) arrange for substitute counsel; or (3) request an adjournment.

### B. *Timeliness*

■■■ In addition to requiring that a party establish excusable neglect under Rule

60(b)(1) or other reasons justifying relief under Rule 60(b)(6) (neither of which Kagan has demonstrated to the required degree), Rule 60(b) provides relief from a final judgment only if a motion is made within reasonable time. Rule 60(b)(1) states that such a motion shall be filed "not more than one year after the judgment or order was entered." Kagan contends that "[T]he district court's refusal to reinstate this matter after a short delay of less than four months is an abuse of the one-year rule [set forth in Rule 60(b)]."

Contrary to Kagan's belief that all motions filed within one year of the dismissal are timely under Rule 60(b)(1), "the one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even though the one-year period has not expired." Wright & Miller, Federal Practice and Procedure, Civil § 2866, p. 232. *See also, Bank of California v. Arthur Anderson & Co.*, 709 F.2d 1174 (7th Cir.1983). "There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable." *Sudeikis v. Chicago Transit Authority*, 774 F.2d 766, 769 (7th Cir.1985). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties." *Ashford v. Stewart*, 657 F.2d 1053, 1055 (9th Cir.1981).

Again, it is instructive for us to review the *Pryor v. United States Postal Service* decision. As noted above, the district court dismissed the plaintiff's action in *Pryor* for lack of prosecution after the plaintiff's counsel failed to respond to a motion to dismiss and failed to appear at a motion conference. The plaintiff's attorney filed a "motion to retain [the action] on the docket" nearly three months after the dismissal, and failed to provide any "legally-sufficient excuse" for the lateness of the motion. More than a month later, he filed a supporting memorandum explaining that the delay in filing the "motion to retain" was due to the plaintiff's counsel's "heavy civil trial setting in the state district court and the taking of depositions in and out of state." Based upon these facts, the court of appeals reasoned, "we cannot conclude that such filings [the "motion to retain" and supporting memorandum] were themselves timely within the meaning of the rule's requirement." 769 F.2d at 288.

In the present case, the plaintiff stated that he learned of the dismissal of his complaint against Caterpillar "towards the end of August" 1984. The testimony is contradictory concerning when plaintiff's counsel Morris initially learned the case was dismissed. Mr. Gubbins stated that he was discharged by Mr. Morris sometime in July 1984 as a result of the dismissal of Kagan's case, and Mr. Kagan testified that he received a letter from Mr. Morris in July stating that he was arranging substitute counsel for Mr. Kagan. Yet, attorney Morris testified that he did not learn of the dismissal of Kagan's action until Kagan himself advised Morris of the fact in late August, 1984. According to the affidavit of J. Stephen Poor, counsel for the defendants, attorney Pekay called him on August 29th and informed him that he would be filing an appearance on behalf of Kagan shortly and would also be filing a motion to vacate the dismissal. Mr. Pekay stated to the court and Mr. Kagan testified that Pekay was not finally retained until mid-October. Despite the fact that the plaintiff, Marvin Kagan, and Mr. Morris, one of his attorneys of record, knew of the dismissal in August, 1984, neither Kagan nor Morris filed any document with the district court or even picked up the telephone to inform the district court that they wished to continue pursuing the litigation against the defendants. Attorney Pekay apparently knew of the dismissal as early as the end of August in 1984, and was retained two months later in October to handle Kagan's lawsuit, yet Pekay failed to even contact the trial court to request reinstatement of

the action, until some 3½ months thereafter on December 11, 1984. Thus, no one informed the trial court of Kagan's intention to continue the litigation until nearly six months after the court's dismissal of the case, more than three months after the plaintiff and Mr. Morris learned of the dismissal, and almost two months after Mr. Kagan retained attorney Pekay. The only excuse offered by the appellant for his delay in contacting the court was the difficulty he experienced in retaining new counsel to handle the case and the purported lack of cooperation of Mr. Gubbins in turning over the case file and in advising new counsel of the status of the case. While these allegations might explain a brief delay in the preparation and filing of a motion to reinstate along with a supporting memorandum (it would be difficult, if not impossible, to prepare such a motion without having the case file and without knowing the facts relevant to the dismissal), they do not justify the total silence of Kagan and his attorney Mr. Morris and the inaction of Mr. Pekay for more than 45 days from mid-October until December 11, 1984. If Gubbins' lack of cooperation with attorneys Morris and Pekay was causing delay in the transfer of the case to Pekay, plaintiff Kagan or his attorneys Morris or Pekay certainly should have advised the trial judge that Attorney Gubbins refused to hand over the case file. At the very least, Kagan or one of his counsel should have informed the court that they intended to ask leave of the Court to reinstate the case and were in the process of preparing the proper motion papers to file with the court.

█ Kagan complains that it was an abuse of the court's discretion to dismiss his case and deny him his day in court because of the conduct of his attorneys. We initially note that Kagan contributed to his own demise in failing to do anything about checking with his attorney as to the progress or lack of progress of his case or personally contacting the district court or insisting that his counsel promptly contact the district court once he learned of the dismissal. As the district court stated:

"Where we go from August to December 11th without having something done, it indicates to me that the plaintiff was either relying on the wrong counsel in an unreasonable fashion or not taking action into his own hands in terms of seeing that the proper action was taken at that time to expeditiously deal with this litigation.... I just happen to believe that the plaintiff had his opportunity for his day in court, and he did not have his day in court per se in terms of the trial or the pursuit of discovery because of a combination of his own actions and the actions of his attorneys."

The case law is clear that the plaintiff "voluntarily chose this attorney as a representative in the action, ... he cannot now avoid the consequences of the acts or omissions of this freely-selected agent." *Link v. Wabash Railroad Co.,* 370 U.S. at 633, 82 S.Ct. at 1390. *See also, United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 692–93, 83 L.Ed.2d 622 (1985); *Tolliver v. Northrup,* 786 F.2d 316, 319 (7th Cir.1986). Thus, the ruling case law fails to support Kagan's assertion that the total responsibility for his current predicament lies with his attorneys. Further, the *Pryor* court specifically addressed and rejected this final argument raised by Kagan:

"[I]t has long been held, particularly in civil litigation, that the mistakes of counsel, who is the legal agent of the client, are chargeable to the client, *see, e.g., Link v. Wabash Railroad Company,* 370 U.S. 626 [82 S.Ct. 1386, 8 L.Ed.2d 734] (1962), no matter how 'unfair' this on occasion may seem. This is especially true where the timeliness of post-judgment filings is concerned, in part because the rule requiring timely notice of appeal is jurisdictional, and in part because of the need that a clear, objective line of finality be drawn with reliable definiteness at some point in time. In this area, at least, appellant may not escape the deficiencies of his chosen legal counsel merely by urging that he was personally uninformed of the state of matters before the court. See *F. Wilson v. Atwood*

*Group,* [725 F.2d 255 (5th Cir. *en banc),* *cert. dismissed,* [—— U.S. ——] 105 S.Ct. 17 [82 L.Ed.2d 912] (1984)].

Were this court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear.... While we are sympathetic to the plight of a client prejudiced by his attorney's inadvertence or negligence, the proper recourse for the grieved client as the Supreme Court noted in *Link,* is to seek malpractice damages from the attorney. [370 U.S. at 634 n. 10, 82 S.Ct. at 1390 n. 10]."

769 F.2d at 288–89. We do not agree that the district court abused its discretion in denying Kagan's motion to reconsider and in denying his request to reinstate the action.

### III.

The judgment of the district court is AFFIRMED.