**R.C. SERVICE, INC., an Illinois corporation, Plaintiff,**

**v.**

**KENDE LEASING CORPORATION, d/b/a K.B. Trucking Company, Defendant.**

No. 81 C 4234.

United States District Court, N.D. Illinois, E.D.

July 28, 1986.

Leonard A. Nelson, Schoenberg, Fisher & Newman, Ltd., Chicago, Ill., for plaintiff.

Walter C. Greenough, Schiff Hardin & Waite, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Defendant Kende Leasing Corporation ("Kende") moves under Rule 60(b) to vacate the default judgment which this court entered against it on December 10, 1985 for repeated failure to comply with this court's discovery orders. Kende has a new lawyer and asserts that the default stems solely from the nonfeasance or the misfeasance of its former lawyer. Because Kende submits no evidence which would excuse or even explain that lawyer's neglect, and cannot show that it diligently monitored the progress of the suit, the motion is denied.

## FACTS

This case dates back to 1981 and has been the subject of several previous memo-randa. Plaintiff R.C. Service ("R.C.") shipped goods via Kende to New Jersey and New York, but the goods never arrived. R.C. alleges that the Kende truck was hijacked, but neither party seems to know where, when or how. In any event, R.C. paid its customers for their losses and sought reimbursement from Kende. The latter, however, refused to pay, and this suit resulted. After three years, little had been accomplished except to determine that the issue in the case was whether Kende was a common carrier, and therefore liable to R.C. regardless of fault under 49 U.S.C. § 11707, or a contract carrier, in which case it would only be liable if it failed to exercise ordinary care with the shipment. *See R.C. Service, Inc. v. Kende Leasing Corp.,* No. 81 C 4234, slip op. (N.D.Ill. Feb. 7, 1984).

Plaintiff first moved for a default for failure to comply with its discovery requests in April 1984. At that point local counsel withdrew from his representation of Kende and defendant was allowed to continue solely with its New Jersey counsel, Joseph Witkowski. This court, however, also ordered compliance with the outstanding discovery requests within three weeks on pain of default. (N.D.Ill. April 17, 1984). At stake were answers to interrogatories and the deposition of defendant's president, Kenneth Burdick.

Precisely the same items were still outstanding in December of 1985. A pause in the process had occurred after June 1, 1984, when plaintiff moved for summary judgment. We denied that motion because R.C. had no positive proof that Kende was a common carrier. Rather, R.C. offered only a negative inference from Kende's lack of Interstate Commerce Commission authority to be a contract carrier for the February 1981 shipment. That showing did not meet R.C.'s burden under Rule 56. No. 81 C 4234, slip op. (N.D.Ill. July 30, 1985) [Available on WESTLAW DCTU database]. After that ruling, we reopened discovery, but the answers and deposition were not forthcoming. In response to R.C.'s motion to compel, on November 18,

1985 we ordered Kende to comply by November 25. We heard nothing. R.C. moved for a default on December 2. We gave Kende an opportunity to avert default by complying by December 10. Again hearing nothing, we ordered Kende's answer stricken and granted R.C. a default judgment.

Kende now alleges, and supports with deposition testimony from Burdick, that it never knew of the July 1985 summary judgment denial or any of the discovery requests or orders which followed. Burdick says he last spoke with Witkowski about the case in May or June 1985 and was told that he need do nothing until a ruling on the summary judgment motion came down. That was the last time he heard anything about this case until one of Kende's customers called to tell him that R.C. was moving to seize the account debt which that customer owed Kende. It was also the last time he spoke with Witkowski. Witkowski failed to appear for Burdick at another matter in August 1985; efforts to contact him proved fruitless and Burdick employed another attorney in October. He thinks that he mentioned the existence of this case to that attorney sometime before the end of 1985, but cannot recall when or the nature of the conversation. The judgment of over $200,000 apparently exceeds Kende's net worth.

## DISCUSSION

■ On the whole, the Federal Rules favor judgments on the merits. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). That concern, however, is considerably tempered when, as here, a party has an extended opportunity to cooperate with the process which would produce the evidence on which a judgment could be reached and has failed to do so. *See, e.g., National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 46 L.Ed.2d 747 (1976). Thus, for example, a defendant seeking to set aside its default must allege facts which, if true, would constitute a meritorious defense to the plaintiff's claim.

*Beshear v. Weinzapfel,* 474 F.2d 127, 132 (7th Cir.1973). Here, Kende realleges that it was merely a contract carrier, and so cannot be liable absent proof of negligence which, it believes, R.C. cannot provide. Because the factual record in this case is so undeveloped despite the amount of time it has been on our docket, these allegations comprise a meritorious defense.

The inquiry then proceeds to determine whether any of the Rule 60(b) grounds for vacating a judgment exist. Fed.R.Civ.P. 55(c). Rule 60(b)(1) permits relief from a judgment for "mistake, inadvertence, surprise, or excusable neglect." Kende's position in a nutshell is that Burdick's failure to contact either Witkowski or this court for several months was "excusable neglect" given the reliance clients usually place on attorneys.

■ The difficulty with that argument is that a client's neglect of his lawsuit is not a Rule 60(b)(1) ground for relief in the Seventh Circuit when his lawyer's neglect caused the default. *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 609–10 (7th Cir. 1986); *Inryco, Inc. v. Metropolitan Engineering Co.,* 708 F.2d 1225, 1231, 1234 (7th Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983); *Ben Sager Chemicals International, Inc. v. E. Targosz & Co.,* 560 F.2d 805, 809–10 (7th Cir.1977). One's lawyer is one's agent. A fundamental rule of agency law is that a principal is responsible for the acts of his agent, absent extraordinary circumstances such as the third party's knowledge that the agent is exceeding his authority, *Old Security Life Insurance Co. v. Continental Illinois National Bank,* 740 F.2d 1384, 1391 (7th Cir.1984), or that the agent is committing a fraud on his principal, *Evanston Bank v. ContiCommodity Services, Inc.,* 623 F.Supp. 1014, 1033 (N.D.Ill.1985). Thus a client is ordinarily bound by his or her lawyer's default. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962); *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir.1986). Relief in contravention of that principle could only be relief on the

ground of extraordinary circumstances, for which one must turn to Rule 60(b)(6), the rule for "any other reason justifying relief from the operation of the judgment." *Kagan, supra,* 795 F.2d at 609–10; *Inryco,* 708 F.2d at 1233; *Ben Sager,* 560 F.2d at 809. The acts of neglect which need to be found excusable to fit Rule 60(b)(1) are the acts in court which led to the default, regardless of whether they were the client's or the lawyer's acts. *Inryco,* 708 F.2d at 1231–1232; *Ben Sager,* 560 F.2d at 809. Thus in this case the neglect which must be excused is that of the lawyer, not of the client.

Failure to earmark the proper portion of Rule 60 is not of itself reason to deny Kende's motion. While relief cannot be granted under both rules simultaneously on the same set of facts, a party may argue in the alternative for relief under either rule from the same set of facts. *Inryco,* 708 F.2d at 1232–1233. In a later filing Kende has asked that we consider their motion under 60(b)(6) as well, and we will. The distinction, however, is significant for purposes of analysis. Kende has submitted affidavit and deposition testimony about its own conduct. For 60(b)(1), however, what we need is evidence about the lawyer.

■ We thus turn first to analysis of whether the lawyer's neglect could be found excusable. The case law in this circuit distinguishes between one simple mistake, *e.g.,* an error about where to file or the date of a hearing, and a "pattern of disregard for the court's orders or rules." *Ellingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir.1981). A single instance of neglect tends to be excusable on its face. *Id.* at 185; *Inryco,* 708 F.2d at 1231; *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.,* 461 F.2d 40 (7th Cir.1972). A pattern of repeated attorney neglect, however, can only be excused on the submission of evidence tending to show that the events which led to the default were not within the attorney's meaningful control. *Kagan, supra,* 795 F.2d at 609; *Ben Sager,* 560 F.2d at 809; *C.K.S. Engineers, Inc.*

*v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1206 (7th Cir.1984). *See also Dominguez v. United States,* 583 F.2d 615, 618 (2d Cir.1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979); *United States v. Cirami,* 535 F.2d 736, 739 (2d Cir.1976).

■ There can be no question that the repeated failure to respond to discovery requests is a pattern of neglect for which default is an appropriate sanction. *White Mountain,* 726 F.2d at 1204; *Inryco,* 708 F.2d at 1228; *Ben Sager,* 560 F.2d at 807. We could perhaps excuse that neglect if Kende offered evidence that somehow showed that Witkowski had under the circumstances not been negligent, *White Mountain,* 726 F.2d at 1206, or that he had been actually disabled by something more than an overload of work or personal problems, *i.e.,* by actual physical or mental illness. *See, e.g., De Bonavena v. Conforte,* 88 F.R.D. 710, 713 (D.Nev.1981). Kende, however, has submitted no evidence whatsoever about Witkowski which would account for his conduct. With no offer of an excuse, his neglect cannot be excusable. Rule 60(b)(1) does not apply.

■ The Seventh Circuit has also noted, without actually adopting, the position of other circuits that a lawyer's gross negligence can be grounds for relief for the client under Rule 60(b)(6). *Inryco,* 708 F.2d at 1234; *Ben Sager,* 560 F.2d at 810. These courts have characterized such gross negligence as an extraordinary circumstance. *See, e.g., Vindigni v. Meyer,* 441 F.2d 376 (2d Cir.1971); *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234 (D.C. Cir.), *cert. denied,* 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964). Witkowski's conduct here perhaps could be characterized as gross negligence, though one would still like to see some evidence about it. *Cf. Kagan, supra,* 795 F.2d at 609–10; *Dominguez,* 583 F.2d at 618; *Cirami,* 535 F.2d at 741. Even if it could, however, and even if we embraced the theory that a lawyer's gross negligence triggers relief from a default for his client, Kende's difficulties on this motion would not be over. Where the

theory applies, the client must nevertheless show that he or she has been personally diligent and conscientious about the case, carefully following its progress and regularly asking both the lawyer and the court about its status. *Inryco,* 708 F.2d at 1234; *Ben Sager,* 560 F.2d at 811. *See, e.g., Dominguez,* 583 F.2d at 618; *Cirami,* 535 F.2d at 741; *Vindigni,* 441 F.2d at 377.

 Kende cannot make such a showing. By Burdick's own admission, he made no effort to contact the lawyer for several months. He also did not try to contact the court, not even after he found Witkowski repeatedly unavailable and had changed attorneys in consequence. We note that the change of counsel for his other matters took place in October. Some effort at contact then could have averted the default, which did not issue until December. Kende, of course, urges us to consider the equities of allowing a large default judgment for which its lawyer was responsible to jeopardize and perhaps swallow up its business. But, as the Seventh Circuit has noted, the size of a judgment cuts both ways. Kende has always known how much was at stake here. If anything, the larger the judgment involved, the fairer it is to presume that the client will diligently monitor the case. *White Mountain,* 726 F.2d at 1208. We also note that Kende was in difficulties as a result of failing to cooperate with discovery back in April of 1984, long before Burdick had any communication problems with Witkowski. Kende has not kept a very close watch on this suit for quite some time. As a result, no relief is available for it under Rule 60(b)(6) either.

This court recognizes that a great many clients in practice tend to do nothing about lawsuits, leaving everything in the hands of their lawyers. The law of this circuit, however, is that if they make that choice, they should in most cases be prepared to take the consequences if it proves to be the wrong choice. *See, e.g., Kagan, supra,* 795 F.2d at 611–12; *Tolliver,* 786 F.2d at 318. We note also that Kende may not be totally without a remedy. As several courts have pointed out, if the lawyer was

indeed grossly negligent, the client may be able to pursue a malpractice action against him. *Link,* 370 U.S. at 634 n. 10, 82 S.Ct. at 1390–91 n. 10; *Tolliver,* 786 F.2d at 318; *Inryco,* 708 F.2d at 1235. But relief from the default judgment under the circumstances presented here is simply not available.

## CONCLUSION

Defendant's motion to vacate this court's default judgment of December 10, 1985 is denied.